**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

**CASE NO.: _____**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **KINETIC INVESTMENT GROUP, LLC and** | ) |
| **MICHAEL SCOTT WILLIAMS,** | ) |
| | ) |
| **Defendants, and** | ) |
| | ) |
| **KINETIC FUNDS I, LLC,** | ) |
| **KCL SERVICES, LLC d/b/a LENDACY,** | ) |
| **SCIPIO, LLC,** | ) |
| **LF42, LLC,** | ) |
| **EL MORRO FINANCIAL GROUP, LLC , and** | ) |
| **KIH, INC. f/k/a KINETIC INTERNATIONAL, LLC,** | ) |
| | ) |
| **Relief Defendants.** | ) |
| _____ | ) |

**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF AND**
<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiff Securities and Exchange Commission alleges:

**I.    <u>INTRODUCTION</u>**

1.      Since at least 2013, Kinetic Investment Group, LLC ("Kinetic Group") and

Michael Scott Williams ("Williams") (collectively, "Defendants") have raised at least $39

million from at least 30 investors in an unregistered fraudulent securities offering.

2.      Defendants solicited investors to invest in Kinetic Funds I, LLC ("Kinetic

Funds"), a purported hedge fund with a sub-fund structure that they managed.  Defendants

represented to investors that the largest sub-fund, Kinetic Funds Yield ("KFYield"), invested

all of its assets in income-producing U.S. listed financial products hedged by listed options. Defendants also touted KFYield as a liquid investment.

3.       In reality, Defendants diverted a substantial portion of KFYield investor capital to KCL Services, LLC d/b/a Lendacy ("Lendacy"), a private, start-up company owned by Williams.  Lendacy was neither listed on a U.S. exchange nor capable of being hedged with listed options. Williams then directed Lendacy to make loans using KFYield assets to himself, entities controlled by him, and others.

4.       Since at least 2015, Williams has misappropriated at least $6.3 million of Kinetic Funds' assets to fund other business ventures and to pay for personal expenses.

5.       Relief Defendants Kinetic Funds, Lendacy, Scipio, LLC ("Scipio"), LF42, LLC ("LF42"), El Morro Financial Group, LLC ("El Morro"), and KIH, Inc. f/k/a/ Kinetic International, LLC ("KIH") (collectively, "Relief Defendants") all received Kinetic Funds assets and proceeds of Defendants' securities violations without any legitimate entitlement to the funds.

6.       By engaging in this conduct, Defendants violated Section 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a), Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), Exchange Act Rule 10b-5, 17 C.F.R. § 240.10b-5, and Sections 206(1), 206(2), 206(4) and Rule 206(4)-8 of the Investment Advisers Act of 1940 ("Advisers Act"), 15 U.S.C. §§ 80b-6(1), 80b-6(2), 80b-6(4), and 17 C.F.R. § 275.206(4)-8.   Unless enjoined, Defendants will continue to violate the federal securities laws.

## II.   DEFENDANTS AND RELIEF DEFENDANTS

### A.   Defendants

7.     Kinetic Group, formerly known as Kinetic Management Group, LLC, is a private Florida limited liability company formed by Williams in 2013 with its principal place of business in Sarasota, Florida.  Kinetic Group manages Kinetic Funds, a private pooled investment fund, and charges Kinetic Funds a 1% management fee.

8.     Williams, age 51, is a resident of San Juan, Puerto Rico, and resided in Sarasota, Florida during the relevant time period.  Williams is the managing member of Kinetic Group, Kinetic Funds, Lendacy and LF42, the president of Scipio and El Morro, and a shareholder of KIH.   Williams is also the managing member of Kinetic Partners, LLC, which in turn is a managing member of Kinetic Funds.  At all relevant times, Williams had an ownership interest in, controlled, and exercised ultimate authority over Kinetic Group and Relief Defendants.

### B.   Relief Defendants

9.     Kinetic Funds is a Delaware limited liability company with its principal place of business in Sarasota, Florida.  Kinetic Funds was formed by Williams in 2012 and operates as a private pooled investment fund managed by Defendants.  Kinetic Funds filed a Form D with the Commission in October 2016 claiming an exemption under Rule 506(c) of the Securities Act for its pooled investment fund interests with a first sale date of October 2012.

10.     Lendacy is a Florida limited liability company formed by Williams in 2013 with its principal place of business in Sarasota, Florida.  Lendacy is purportedly in the business of providing lines of credit to accredited investors.  Lendacy received at least $11 million of investor assets and approximately $9.1 million has not been returned.  Defendants then used

the investor funds diverted to Lendacy to fund purported loans to Williams, his business entities, and others, and at least $6.8 million remains outstanding from Williams and his entities.

11.     Scipio is a Puerto Rico limited liability company formed by Williams in 2016 with its principal place of business in San Juan, Puerto Rico.  Scipio used at least $2,755,000 of investor assets routed through Lendacy to purchase a historic bank building in San Juan, Puerto Rico.

12.     El Morro is a Puerto Rico limited liability company formed by Williams in 2016 with its principal place of business in San Juan, Puerto Rico.  El Morro received at least $565,000 of investor assets, routed through Lendacy, to fund general operating expenses for Williams' various entities and to partially fund a multi-day launch event for KIH.

13.     KIH is a Puerto Rico corporation with its principal place of business in San Juan, Puerto Rico.  Williams formed KIH in 2018 as a purported Puerto Rico licensed international financial entity.  KIH used at least $1,380,000 of investor assets to fund its start-up costs.

14.     LF42 is a Delaware limited liability company formed by Williams in 2012 with its principal place of business in Sarasota, Florida.  LF42 executed a credit agreement with Lendacy reflecting a loan for $2,550,000, of which a substantial portion was used by El Morro and KIH and at least $100,000 was retained by LF42.

III.     **JURISDICTION AND VENUE**

15.     The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1), and 22(a) of the Securities Act , 15 U.S.C. §§ 77t(b), 77t(d)(1), and 77v(a), Sections 21(d) and

27 of the Exchange Act, 15 U.S.C. §§ 78u(d) and 78aa, and  Sections 209(d) and 214(a) of the Advisers Act, 15 U.S.C. §§ 80b-9(d) and 80b-14(a).

16.    This Court has personal jurisdiction over the Defendants, and venue is proper in this judicial district because Kinetic Group resides in this district, at least five investors in Kinetic Funds reside in this district, and many of the acts and transactions constituting violations of the Securities Act, Exchange Act, and Advisers Act occurred in this district.

17.    In connection with the conduct alleged in this Complaint, Defendants, directly or indirectly, singly or in concert with others, made use of the means or instrumentalities of interstate commerce, the means and instruments of transportation or communication in interstate commerce, or the mails.

## IV.    DEFENDANTS' ACTS IN VIOLATION OF THE SECURITIES LAWS

### A.    The Securities Transactions

18.    Since 2012, Defendants have offered Kinetic Funds as an investment opportunity.    Kinetic Funds employs four investment strategies through sub-funds characterized as yield, gold, growth, and inflation.  The yield strategy, known as KFYield, accounted for approximately 98% of Kinetic Funds' assets as of January 2019.

19.    Defendants solicited investors for Kinetic Funds in several ways.  Williams initially offered Kinetic Funds to his friends, partners and associates.  Over time, Defendants developed marketing brochures, websites and used referrals to solicit additional investors.

20.    Defendants did not utilize a private placement or confidential memorandum to provide disclosures to potential investors.  Rather, Defendants typically provided potential investors with (a) a copy of the Kinetic Funds Subscription Agreement ("Subscription

Agreement"), (b) either Exhibit "B-1" or "C-1" to the Kinetic Funds Operating Agreement ("Operating Agreement"), which investors used to designate the strategy they wanted to invest in, (c) the Kinetic Funds Offering Questionnaire ("Offering Questionnaire"), and (d) Kinetic Funds marketing brochures.  Defendants gave some investors a copy of the Operating Agreement.

21.     In most cases, investors signed the Subscription Agreement and either Exhibit B-1 or C-1 to the Operating Agreement, and completed the Offering Questionnaire.

22.     The Subscription Agreement provides that an investor "irrevocably subscribes for a membership interest" in Kinetic Funds and that such membership interests are "'restricted securities' as that term is defined in Rule 144 under the [Securities Act of 1933]."  Exhibits B-1 and C-1 to the Kinetic Funds Operating Agreement state that an investor agrees to invest in at least one of the Kinetic Funds investment strategies and that Williams has "full and complete discretion to make any and all trading decisions and affect any strategies as [he] shall determine . . . ."  It provides that KFYield focuses on "income generation" and that investors can withdraw their principal under certain conditions.  It further authorizes Kinetic Group to charge an annual 1% management fee.

23.     The membership interests in Kinetic Funds sold to investors are investment contracts, and therefore securities, within the meaning of the Advisers Act.

24.     In 2015, Williams expanded the marketing materials in order to attract more investors.  He arranged to have, among other things, a description of KFYield and its performance information, assets under management and holdings available on Bloomberg, a computer system that allows viewers to access real-time financial data on companies.

6

Williams took this step in order to make KFYield appear transparent and to give it a measure of credibility.  From that point on, Defendants provided potential investors with Bloomberg reports about the KFYield strategy.  Williams was responsible for the content and accuracy of the information provided to Bloomberg.

25.     Williams also began in 2015 to market Kinetic Funds with his other entity, Lendacy.  Williams sometimes described Lendacy as a "real estate lending structure" designed to meet credit demands of accredited investors. Williams and his associate, who later became Lendacy's president, told prospective investors that if they invested in KFYield they were eligible to receive a Lendacy credit line of up to 70% of their investment in KFYield at low interest rates.  They promoted case studies with various scenarios regarding the potential use of drawing on the credit line, such as refinancing a home.

26.     In 2016, Williams moved from Florida to Puerto Rico, opened a second office there, and began soliciting investors in Puerto Rico to invest in Kinetic Funds.

27.     Defendants ultimately raised approximately $39 million from at least 30 investors located mostly in Florida and Puerto Rico.

**B.     The Misrepresentations and Omissions**

28.     Defendants made, both orally and in writing, material misrepresentations to investors and prospective investors regarding Kinetic Funds and the use of investor funds:

a.     Defendants told investors that their money would be invested in income-producing U.S. listed financial products.  Exhibits B-1 and C-1 to the Operating Agreement likewise state that Kinetic Funds "will trade derivatives, but may also be

7

invested in individual stocks, components of the indices, cash, and other exchange listed products . . .".

b. Defendants advised investors that their principal would be secure because the KFYield portfolio would be hedged with listed options.  Written marketing materials state that Kinetic Funds will "maintain 90% principle [sic] protection" and that "90% [of KFYield's] portfolio [is] hedged using listed options against market volatility risk."

c. With respect to the Lendacy credit line product, Defendants led prospective investors to believe Lendacy had a separate funding source that would finance the loan from Lendacy to the investor, and that their entire capital would be invested in KFYield.  They gave investors marketing materials stating: "[y]ou keep 100% of your capital working, generating dividends and interest with the opportunity for continued appreciation."

d. Defendants touted the liquidity of KFYield assets.  Written brochures claim:  "Your money is always available . . . The fund's positions are hedged out to 90 days, so with a 30 day written notice prior to the quarter end, the fund can redeem 100% principal without penalties."

29. Defendants knew the representations were false:

a. Defendants did not invest all investor funds in U.S. listed financial products.  Since at least 2013, Defendants invested a substantial portion of investor capital in Lendacy, Williams' entity.  Lendacy is not a U.S. listed financial product.

b.      Defendants did not hedge at least 90% of KFYield's portfolio using listed options.  KFYield assets diverted to Lendacy accounted for more than 23% of KFYield's holdings between January 2015 and September 2019.  And, Lendacy could not be hedged using listed options.

c.      Defendants used KFYield assets, not a separate funding source, to fund Lendacy and its undisclosed loans.  Most investors were not told KFYield assets were used to fund their or others' Lendacy loans.

d.      KFYield's investment in Lendacy, the assets of which were unsecured loans primarily to Williams, significantly limits its ability to honor redemption requests to all investors equitably.  Moreover, any redemptions made would further concentrate KFYield's assets in its illiquid investment in Lendacy.

30.     Furthermore, Defendants provided false account statements to investors regarding their holdings in Kinetic Funds.  Kinetic Funds' known assets are less than the aggregate amount reflected on investor account statements.

31.     Williams had ultimate authority for the false and misleading statements and omissions made orally and in documents provided to clients and prospective clients.

**C.      The Misappropriation of Investor Funds**

32.     Once investors invested in KFYield, Williams then misappropriated KFYield funds for the benefit of himself and other business ventures.

33.     Payoff of Relative's Mortgage.   In April 2015, Williams used $37,000 of KFYield funds, routed to Lendacy, to pay off the mortgage on his relative's house.  On April 29, 2015, Williams executed a Lendacy "Credit Facility Agreement" reflecting a purported

loan for $40,000.  Williams' relative did not grant Lendacy a mortgage or provide any other consideration to Lendacy, and the Credit Facility Agreement was unsecured.

34.     <u>Purchase of Real Property for Personal Use</u>.   In March 2017, Williams purchased for $1,512,575.50 three luxury apartments and two parking spaces for himself in San Juan, Puerto Rico.  Williams used KFYield funds, diverted to Lendacy, to pay for the properties.  Williams titled these properties in his name.

35.     Certain employees subsequently raised concerns to Williams about his use of KFYield funds to pay for the San Juan properties.  Williams responded by stating that he was expecting a future payout from the sale of an unrelated company and would pay the fund back at that time.  After employees pressed the issue, Williams executed a Lendacy "Credit Facility Agreement" for a $1,517,000 loan.   Williams did not grant Lendacy a mortgage on the properties, and the Credit Facility Agreement is unsecured.

36.     <u>Purchase of Commercial Property</u>.   In May 2018, Williams used at least $2,755,000 of KFYield funds, routed to Lendacy in the form of a Lendacy loan, to purchase a historic bank building in Old San Juan, Puerto Rico.   Williams titled the building in the name of his entity, Scipio, and executed a Lendacy "Credit Facility Agreement" on Scipio's behalf. Scipio did not grant Lendacy a mortgage on the property, and Williams did not guarantee repayment of the purported loan, which is unsecured.

37.     <u>Funding of Williams' Other Companies</u>.   In April 2019, Williams used $2,050,000 of additional KFYield funds in the form of two Lendacy loans to provide financial support to his outside business ventures.  These expenses included, among others, paying for the development of KIH, an international financial entity in Puerto Rico, the development of

an international exchange in Puerto Rico, and paying more than $600,000 for a multi-day event held to highlight and introduce KIH to the public at a luxury hotel in Puerto Rico.  Williams executed on behalf of his entity, LF42, two "Credit Facility Agreements" reflecting a total loan in the amount of $2,550,000.  Williams did not guarantee repayment of the purported loan, which is unsecured.

38.     As of October 2019, Lendacy had at least $12.6 million in outstanding purported loans made with KFYield assets to Williams, his entities, and other investors.  Of that amount, at least $6.8 million reflects outstanding loans from Williams and two of his entities.

**D.     The Undisclosed Conflicts of Interest**

39.     Defendants had multiple conflicts of interest relating to the operation and management of Kinetic Funds:

a.     Defendants transferred investor capital amounting to at least $9.1 million net to Lendacy, an entity owned by Williams;

b.     Williams and two of his entities took unsecured, purported loans amounting to at least $6.8 million funded with KFYield assets; and

c.     Defendants used $30,872.44 of investor funds to pay Silexx Financial Systems, LLC ("Silexx"), another company that Williams partially owned and/or had a financial interest in.

40.     Defendants failed to disclose the conflicts of interest to investors or prospective investors.

41.     All of the misrepresentations and omissions set forth herein, individually and in the aggregate, are material.  There is a substantial likelihood that a reasonable investor would consider the misrepresented facts and omitted information regarding how their money would be invested, the safety of those investments, the value of those investments, the ability to repay investors, Williams' misappropriation of investor funds through purported loans to himself and his entities, and the undisclosed conflicts of interest Williams had with respect to Lendacy and Silexx to be important, and/or that the disclosure of the omitted facts or accurate information would alter the "total mix" of information available to investors.

## V.      CLAIMS FOR RELIEF

### COUNT I

### VIOLATION OF SECTION 17(a)(1) OF THE SECURITIES ACT

42.     The Commission adopts by reference paragraphs 1 through 41 of this Complaint.

43.     Defendants, in the offer or sale of securities by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, knowingly or recklessly, directly or indirectly employed devices, schemes, or artifices to defraud.

44.     By reason of the foregoing Defendants violated and, unless enjoined, are reasonably likely to continue to violate Section 17(a)(1) of the Securities Act, 15 U.S.C. § 77q(a)(1).

## COUNT II

### VIOLATION OF SECTION 17(a)(2) OF THE SECURITIES ACT

45.    The Commission adopts by reference paragraphs 1 through 41 of this Complaint.

46.    Defendants, in the offer or sale of securities by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, negligently obtained money or property by means of untrue statements of material facts and omissions to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

47.    By reason of the foregoing Defendants violated and, unless enjoined, are reasonably likely to continue to violate Section 17(a)(2) of the Securities Act, 15 U.S.C. § 77q(a)(2).

## COUNT III

### VIOLATION OF SECTION 17(a)(3) OF THE SECURITIES ACT

48.    The Commission adopts by reference paragraphs 1 through 41 of this Complaint.

49.    Defendants, in the offer or sale of securities by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, negligently engaged in transactions, practices, or courses of business which have operated, are now operating or will operate as a fraud or deceit upon the purchasers.

50.     By reason of the foregoing Defendants violated and, unless enjoined, are reasonably likely to continue to violate Section 17(a)(3) of the Securities Act, 15 U.S.C. § 77q(a)(3).

## COUNT IV

### VIOLATION OF SECTION 10(b) AND RULE 10b-5(a) OF THE EXCHANGE ACT

51.     The Commission adopts by reference paragraphs 1 through 41 of this Complaint.

52.     Defendants, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly employed devices, schemes or artifices to defraud in connection with the purchase or sale of any security.

53.     By reason of the foregoing Defendants violated and, unless enjoined, are reasonably likely to continue to violate Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Exchange Act Rule 10b-5(a), 17 C.F.R. § 240.10b-5(a).

## COUNT V

### VIOLATION OF SECTION 10(b) AND RULE 10b-5(b) OF THE EXCHANGE ACT

54.     The Commission adopts by reference paragraphs 1 through 41 of this Complaint.

55.     Defendants, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, in connection with the purchase or sale of any security.

56.     By reason of the foregoing Defendants violated and, unless enjoined, are reasonably likely to continue to violate Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Exchange Act Rule 10b-5(b), 17 C.F.R. § 240.10b-5(b).

## COUNT VI

### VIOLATION OF SECTION 10(b) AND RULE 10b-5(c) OF THE EXCHANGE ACT

57.     The Commission adopts by reference paragraphs 1 through 41 of this Complaint.

58.     Defendants, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly engaged in acts, practices, and courses of business which have operated, are now operating or will operate as a fraud upon any person in connection with the purchase or sale of any security.

59.     By reason of the foregoing Defendants violated and, unless enjoined, are reasonably likely to continue to violate Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Exchange Act Rule 10b-5(c), 17 C.F.R. § 240.10b-5(c).

## COUNT VII

### VIOLATION OF SECTION 206(1) OF THE ADVISERS ACT

60.     The Commission adopts by reference paragraphs 1 through 41 of this Complaint.

61.     Since at least 2013, Defendants, for compensation, engaged in the business of directly advising Kinetic Funds, and thus the potential and actual investors in Kinetic Funds, as to the value of securities or as to the advisability of investing in, purchasing, or selling

securities.  Defendants were therefore "investment advisers" within the meaning of Section 202(a)(11) of the Advisers Act, 15 U.S.C. § 80b-2(a)(11).

62.      Defendants, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly, knowingly or recklessly employed a device, scheme, or artifice to defraud one or more clients or prospective clients.

63.      By reason of the foregoing Defendants violated and, unless enjoined, are reasonably likely to continue to violate, Section 206(1) of the Advisers Act, 15 U.S.C. § 80b-6(1).

## COUNT VIII

**(Alleged in the Alternative to Count VII as to Williams only)**

**AIDING AND ABETTING VIOLATIONS OF
SECTION 206(1) OF THE ADVISERS ACT**

64.      The Commission adopts by reference paragraphs 1 through 41 of this Complaint.

65.      As alleged in Count VII above, Kinetic Group committed primary violations of Section 206(1) of the Advisers Act.

66.      By reason of the foregoing and pursuant to Section 209(d) of the Advisers Act, 15 U.S.C. § 80b-9(d), Williams aided and abetted, and is therefore liable for, the primary violations committed by Kinetic Group of Section 206(1) of the Advisers Act, 15 U.S.C. § 80b-6(1), because Williams knowingly or recklessly provided substantial assistance to Kinetic Group's violations of this provision, and, unless enjoined is reasonably likely to continue to aid and abet Kinetic Group's violations of Section 206(1) of the Advisers Act, 15 U.S.C. § 80b-6(1).

## COUNT IX

### VIOLATION OF SECTION 206(2) OF THE ADVISERS ACT

67.     The Commission adopts by reference paragraphs 1 through 41 of this Complaint.

68.     Since at least 2013, Defendants, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly, negligently engaged in transactions, practices, or courses of business which operated as a fraud or deceit upon one or more clients or prospective clients.

69.     By reason of the foregoing Defendants violated and, unless enjoined, are reasonably likely to continue to violate, Section 206(2) of the Advisers Act, 15 U.S.C. § 80b-6(2).

## COUNT X

### (Alleged in the Alternative to Count IX as to Williams only)

### AIDING AND ABETTING VIOLATIONS OF SECTION 206(2) OF THE ADVISERS ACT

70.     The Commission adopts by reference paragraphs 1 through 41 of this Complaint.

71.     As alleged in Count IX above, Kinetic Group committed primary violations of Section 206(2) of the Advisers Act.

72.     By reason of the foregoing and pursuant to Section 209(d) of the Advisers Act, 15 U.S.C. § 80b-9(d), Williams aided and abetted, and is therefore liable for, the primary violations committed by Kinetic Group of Section 206(2) of the Advisers Act, 15 U.S.C. § 80b-6(2), because Williams knowingly or recklessly provided substantial assistance to Kinetic

Group's violations of this provision, and, unless enjoined is reasonably likely to continue to aid and abet Kinetic Group's violations of Section 206(2) of the Advisers Act, 15 U.S.C. § 80b-6(2).

## COUNT XI

### VIOLATION OF SECTION 206(4) AND RULE 206(4)-8(a)(1) OF THE ADVISERS ACT

73.     The Commission adopts by reference paragraphs 1 through 41 of this Complaint.

74.     Kinetic Funds investments were "pooled investment vehicles" within the meaning of Rule 206(4)-8(b) of the Advisers Act.

75.     Since at least 2013, Defendants directly or indirectly, negligently made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, to investors or prospective investors in Kinetic Funds.

76.     By reason of the foregoing, Defendants violated and, unless enjoined, are reasonably likely to continue to violate Section 206(4) of the Advisers Act, 15 U.S.C. § 80b-6(4), and Advisers Act Rule 206(4)-8(a)(1), 17 C.F.R. § 275.206(4)-8(a)(1).

## COUNT XII

### (Alleged in the Alternative to Count XI as to Williams only)

### AIDING AND ABETTING VIOLATIONS OF SECTION 206(4) AND RULE 206(4)-8(a)(1) OF THE ADVISERS ACT

77.     The Commission adopts by reference paragraphs 1 through 41 of this Complaint.

78.     As alleged in Count XI above, Kinetic Group committed primary violations of Section 206(4) of the Advisers Act and Rule 206(4)-8(a)(1) thereunder.

79.     By reason of the foregoing and pursuant to Section 209(d) of the Advisers Act, 15 U.S.C. § 80b-9(d), Williams aided and abetted, and is therefore liable for, the primary violations committed by Kinetic Group of the Advisers Act, 15 U.S.C. § 80b-6(4) and Rule 206(4)-8(a)(1) thereunder [17 C.F.R. § 275.206(4)-8(a)(1)], because Williams knowingly or recklessly provided substantial assistance to Kinetic Group's violations of these provisions, and, unless enjoined is reasonably likely to continue to aid and abet Kinetic Group's violations of Section 206(4) of the Advisers Act, 15 U.S.C. § 80b-6(4) and Rule 206(4)-8(a)(1) thereunder [17 C.F.R. § 275.206(4)-8(a)(1)].

## COUNT XIII

### VIOLATION OF SECTION 206(4) AND RULE 206(4)-8(a)(2) OF THE ADVISERS ACT

80.     The Commission adopts by reference paragraphs 1 through 41 of this Complaint.

81.     Since at least 2013, Defendants directly or indirectly, negligently engaged in acts, practices, or course of business that were fraudulent, deceptive, or manipulative with respect to investors and/or prospective investors in Kinetic Funds.

82.     By reason of the foregoing, Defendants violated and, unless enjoined, are reasonably likely to continue to violate Section 206(4) of the Advisers Act, 15 U.S.C. § 80b-6(4), and Advisers Act Rule 206(4)-8(a)(2), 17 C.F.R. § 275.206(4)-8(a)(2).

## COUNT XIV

### (Alleged in the Alternative to Count XIII as to Williams only)

### AIDING AND ABETTING VIOLATIONS OF
### SECTION 206(4) AND RULE 206(4)-8(a)(2) OF THE ADVISERS ACT

83.     The Commission adopts by reference paragraphs 1 through 41 of this Complaint.

84.     As alleged in Count XIII above, Kinetic Group committed primary violations of Section 206(4) of the Advisers Act and Rule 206(4)-8(a)(2) thereunder.

85.     By reason of the foregoing and pursuant to Section 209(d) of the Advisers Act 15 U.S.C. § 80b-9(d), Williams aided and abetted, and is therefore liable for, the primary violations committed by Kinetic Group of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-8(a)(2) thereunder [17 C.F.R. § 275.206(4)-8(a)(2)], because Williams knowingly or recklessly provided substantial assistance to Kinetic Group's violations of these provisions, and, unless enjoined is reasonably likely to continue to aid and abet Kinetic Group's violations of Section 206(4) of the Advisers Act, 15 U.S.C. § 80b-6(4) and Rule 206(4)-8(a)(2) thereunder [17 C.F.R. § 275.206(4)-8(a)(2)].

## COUNT XV

### Unjust Enrichment (as to Relief Defendants)

86.     The Commission adopts by reference paragraphs 1 through 41 of this Complaint.

87.     The Relief Defendants obtained funds as part, and in furtherance of the securities violations alleged above without a legitimate claim to those funds, and under those

circumstances it is not just, equitable or considerable for the Relief Defendants to retain the funds. The Relief Defendants were unjustly enriched.

88.     Relief Defendants should be ordered to disgorge the funds they received as a result of the Defendants' violations of the federal securities laws.

## VI.    <u>RELIEF REQUESTED</u>

**WHEREFORE**, the Commission respectfully requests the Court find the Defendants committed the violations alleged and:

### I.

### <u>Permanent Injunction</u>

Issue a Permanent Injunction, restraining and enjoining Williams and Kinetic Group, their agents, servants, employees, attorneys, and representatives, and all persons in active concert or participation with them, and each of them, from violating Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), Exchange Act Rule 10b-5, 17 C.F.R. § 240.10b-5, and Sections 206(1), 206(2), and 206(4) and Rule 206(4)-8(a) of the Advisers Act, 15 U.S.C. §§ 80b-6(1), 80b-6(2), and 80b-6(4), and 17 C.F.R. § 275.206(4)-8(a).

### II.

### <u>Asset Freeze and Sworn Accountings</u>

Issue an Order freezing the assets of Williams, Kinetic Group, Kinetic Funds, Lendacy, Scipio, LF42, El Morro, and KIH, until further Order of the Court, and requiring Williams, Kinetic Group, Kinetic Funds, Lendacy, Scipio, LF42, El Morro, and KIH to file sworn accountings with this Court.

## III.

## **Appointment of a Receiver**

Appoint a receiver over Kinetic Group, Kinetic Funds, Lendacy, Scipio, LF42, El Morro, and KIH.

## IV.

## **Records Preservation**

Issue an Order restraining and enjoining Williams, Kinetic Group, Kinetic Funds, Lendacy, Scipio, LF42, El Morro, and KIH, and each of their directors, officers, agents, servants, employees, attorneys, depositories, banks, and those persons in active concert or participation  with any one or more of them, and  each  of them, from, directly  or indirectly, destroying, mutilating, concealing, altering, disposing of, or otherwise rendering illegible in any manner,  any  of the  books,  records,  documents, correspondence, brochures, manuals, papers, ledgers, accounts, statements, obligations, files and other property of or pertaining to Defendants and Relief Defendants, wherever located and in whatever form, electronic or otherwise, that refer or relate to the acts or courses of conduct alleged in this Complaint, until further Order of this Court.

## V.

## **Disgorgement and Prejudgment Interest**

Issue an Order directing Williams, Kinetic Group, Kinetic Funds, Lendacy, Scipio, LF42, El Morro, and KIH to disgorge all ill-gotten gains received within the applicable statute of limitations, including prejudgment interest, resulting from the acts and/or courses of conduct alleged in this Complaint.

## VI.

## Civil Penalty

Issue an Order directing Williams and Kinetic Group to pay a civil money penalty pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d), and Section 209(e) of the Advisers Act, 15 U.S.C. § 80b-9(e).

## VII.

## Further Relief

Grant such other and further relief as may be necessary and appropriate.

## VIII.

## Retention of Jurisdiction

Further, the Commission respectfully requests the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

## IX.

## Demand for Jury Trial

The Commission hereby demands a trial by jury on any and all issues in this action so triable.

February 20, 2020                        Respectfully submitted,


                              By:    */s/ Christine Nestor & Stephanie N. Moot*
                                     Christine Nestor
                                     Senior Trial Counsel
                                     Fla. Bar No. 597211
                                     Direct Dial: (305) 982-6367
                                     E-mail: nestorc@sec.gov

                                     Stephanie N. Moot
                                     Trial Counsel
                                     Fla. Bar No.  30377
                                     Direct Dial:  (305) 982-6313
                                     E-mail: moots@sec.gov

                                     John T. Houchin
                                     Senior Counsel
                                     Fla. Bar No. 118966
                                     Direct Dial:  (305) 416-6292
                                     E-mail: houchinj@sec.gov

                                     Barbara Viniegra
                                     Senior Counsel
                                     Fla. Bar No.  716901
                                     Direct Dial:  (305) 416-6218
                                     E-mail: viniegrab@sec.gov

                                     Attorneys for Plaintiff
                                     **Securities and Exchange Commission**
                                     801 Brickell Avenue, Suite 1950
                                     Miami, FL 33131
                                     Facsimile: (305) 536-4154