**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

SECURITIES AND EXCHANGE COMMISSION,

          Plaintiff,

vs.                                    Case No. 8:20-cv-00394

KINETIC INVESTMENT GROUP, LLC AND
MICHAEL SCOTT WILLIAMS,

          Defendants, and

KINETIC FUNDS I, LLC,
KCL SERVICES, LLC D/B/A LENDACY,
SCIPIO, LLC,
LF42, LLC,
EL MORRO FINANCIAL GROUP, LLC, AND
KIH, INC. F/K/A KINETIC INTERNATIONAL, LLC

          Relief Defendants

_____/

**DEFENDANT MICHAEL SCOTT WILLIAMS' ANSWER**
**AND AFFIRMATIVE DEFENSES TO THE SEC'S**
**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

      Defendant Michael Scott Williams ("Mr. Williams"), submits the following Answer

and Affirmative Defenses to the Securities and Exchange Commission's ("SEC") Complaint

for Injunctive and Other Relief and Demand for Jury Trial (the "Complaint") (Doc. 1)[1]:

---

[1] It is Mr. Williams' understanding that the Receiver, stepping into the shoes of Defendant Kinetic Investment Group, LLC ("Kinetic Investment Group"), and Relief Defendants Kinetic Funds I, LLC ("Kinetic Funds"), KCL Service, LLC d/b/a Lendacy ("Lendacy"), Scipio, LLC ("Scipio"), LF42, LLC ("LF42"), El Morro Financial Group, LLC ("El Morro"), and KIH, Inc., f/k/a Kinetic International, LLC ("KIH") (collectively, "Relief Defendants"), will file an Answer and Affirmative Defenses on behalf of Kinetic Investment Group and each Relief Defendant. *See* Doc. 55.

## ANSWER

All allegations not specifically admitted herein are denied.  To the extent a response is deemed required to the Complaint's headings or subheadings, Mr. Williams denies any allegations contained therein and denies any liability to the SEC.  Mr. Williams reserves the right to seek to amend and/or supplement his Answer as may be necessary.

## I.      INTRODUCTION

1.      Mr. Williams admits only that Kinetic Investment Group, Mr. Williams and others raised approximately $39 million from approximately 30 accredited investors since approximately 2013.  Mr. Williams denies the remaining allegations contained in Paragraph 1.

2.      Mr. Williams admits only that he, and others, solicited some potential accredited investors to invest in Kinetic Funds.  Mr. Williams denies the remaining allegations contained in Paragraph 2.

3.      Mr. Williams admits only that Lendacy was a private, start-up company co-owned by Mr. Williams and that Lendacy was not listed on a U.S. exchange.  Mr. Williams denies the remaining allegations contained in Paragraph 3.

4.      Denied.

5.      Denied.

6.      Denied.

## II.      DEFENDANTS AND RELIEF DEFENDANTS

### A.      Defendants

7.      Mr. Williams admits only that (a) Kinetic Investment Group was formerly known as Kinetic Management Group, LLC, (b) Kinetic Investment Group was a private

2

limited liability company formed by Mr. Williams in 2013 with its principal place of business in Sarasota, Florida, (c) Kinetic Investment Group managed Kinetic Funds, (d) Kinetic Funds was a private pooled investment fund, and (e) Kinetic Investment Group charged Kinetic Funds a 1% management fee.

8.      Mr. Williams admits only that he (a) is 51, a resident of San Juan, Puerto Rico, and previously resided in Sarasota Florida; (b) was the managing member of LF42, (c) was the president of Scipio and El Morro, and a shareholder of KIH; and (d) had an ownership interest in the Relief Defendants. Mr. Williams denies the remaining allegations contained in Paragraph 8.

**B.      Relief Defendants**

9.      Mr. Williams admits only that (a) Kinetic Funds was formed by Mr. Williams in 2012 as a Delaware limited liability company with its principal place of business in Sarasota, Florida, (b) Kinetic Funds was managed by Kinetic Investment Group and Mr. Williams, and (c) Kinetic Funds filed a Form D with the Commission in October 2016 claiming an exemption under Rule 506(c) of the Securities Act for its pooled investment funds interest with a first sale date of October 2012. Mr. Williams, however, is without knowledge as to whether Kinetic Funds is presently operating and therefore denies the remaining allegations contained in Paragraph 9.

10.      Mr. Williams admits only that Lendacy was a Florida limited liability company formed by Mr. Williams in 2013 with its principal place of business in Sarasota, Florida, and that Lendacy provided lines of credit to accredited investors.  Mr. Williams denies the remaining allegations contained in Paragraph 10.

11.    Mr. Williams admits only that Scipio was a Puerto Rico limited liability company formed by Mr. Williams in 2016 with its principal place of business in San Juan, Puerto Rico.  Mr. Williams denies the remining allegations contained in Paragraph 11.

12.    Mr. Williams admits only that El Morro was a Puerto Rico limited liability company co-formed by Mr. Williams in 2016 with its principal place of business in San Juan, Puerto Rico.  Mr. Williams denies the remining allegations contained in Paragraph 12.

13.    Mr. Williams admits only that KIH was a Puerto Rico corporation with its principal place of business in San Juan, Puerto Rico, and was formed in 2018.  Mr. Williams denies the remining allegations contained in Paragraph 13.

14.    Mr. Williams admits only that (a) LF42 was a Delaware limited liability company formed by Mr. Williams in 2012 with its principal place of business in Sarasota, Florida, and (b) LF42 applied for and received a $2,550,000 line of credit from Lendacy.  Mr. Williams further states that the allegations of Paragraph 14 refer to a credit agreement.  Mr. Williams refers to the credit agreement for a complete and accurate statement of its contents. To the extent the allegations of Paragraph 14 are not consistent with the credit agreement, Mr. Williams denies the allegations.  Mr. Williams denies the remaining allegations contained in Paragraph 14.

**III.    JURISDICTION AND VENUE**

15.    Paragraph 15 states legal, administrative, or procedural conclusions as interpreted by the SEC, and for which no response is required. Mr. Williams denies that the SEC is entitled to any of the damages or other relief set forth in the Complaint, and denies all liability to the SEC.

16.     Paragraph 16 states legal, administrative, or procedural conclusions as interpreted by the SEC, and for which no response is required.  Mr. Williams denies that the SEC is entitled to any of the damages or other relief set forth in the Complaint, and denies the remaining allegations contained in Paragraph 16.

17.     Paragraph 17 states legal, administrative, or procedural conclusions as interpreted by the SEC, and for which no response is required.

## IV.    DEFENDANTS' ACTS IN VIOLATION OF THE SECURITIES LAWS

### A.    The Securities Transactions

18.     Mr. Williams admits only that (a) since 2012, Kinetic Investment Group, Mr. Williams and others offered Kinetic Funds as an investment opportunity, and (b) Kinetic Funds employed four investment strategies through sub-fuds characterized as yield, gold, growth, and inflation.  Mr. Williams is without knowledge as to whether KFYield accounted for 98% of Kinetic Funds' assets as of January 2019 and therefore denies this allegation of Paragraph 18.

19.     Mr. Williams admits that he and others solicited some potential accredited investors for Kinetic Funds, that Mr. Williams and others offered Kinetic Funds to his friends, partners and associates and that Mr. Williams and others developed marketing brochures, websites and used referrals to solicit some additional potential accredited investors.  Mr. Williams denies the remaining allegations of Paragraph 19.

20.     Mr. Williams admits only that he did not utilize a private placement or confidential memorandum to provide disclosures to potential accredited investors and that Mr. Williams gave some accredited investors a copy of the Operating Agreement. Mr. Williams further states that the remaining allegations of Paragraph 20 refer to the Subscription

Agreement, Operating Agreement, Offering Questionnaire and Kinetic Funds' marketing brochures. Mr. Williams refers to the Subscription Agreement, Operating Agreement, Offering Questionnaire and Kinetic Funds' marketing brochures for a complete and accurate statement of their contents. To the extent the allegations of Paragraph 20 are not consistent with Subscription Agreement, Operating Agreement, Offering Questionnaire and Kinetic Funds' marketing brochures, Mr. Williams denies the allegations.

21.     Admitted.

22.     Mr. Williams states that allegations of Paragraph 22 refer to the Subscription Agreement and Exhibits B-1 and C-1 to the Operating Agreement. Mr. Williams refers to the Subscription Agreement and Exhibits B-1 and C-1 to the Operating Agreement for a complete and accurate statement of their contents. To the extent the allegations of Paragraph 22 are not consistent with the Subscription Agreement and Exhibits B-1 and C-1 to the Operating Agreement, Mr. Williams denies the allegations.

23.     Paragraph 23 states legal, administrative, or procedural conclusions as interpreted by the SEC, and for which no response is required.

24.     Mr. Williams admits only that (a) in 2015 Mr. Williams and others expanded the marketing materials in order to attract more investors, (b) a description of KFYield and its performance information, assets under management and holdings were available on Bloomberg, and (c) Mr. Williams, Kinetic Investment Group and others provided potential investors with Bloomberg reports. Mr. Williams denies the remaining allegations contained in Paragraph 24.

25.     Mr. Williams admits that he and others began in 2015 to market Kinetic Funds with Lendacy on occasion.  Mr. Williams is without sufficient knowledge or information to form a belief as to the truth of the allegations of the second sentence of Paragraph 25 and on such basis, denies them.  Mr. Williams further states that Lendacy's President and sometimes Mr. Williams, and others, informed prospective accredited investors in KFYield that they were potentially eligible to receive a Lendacy line of credit of up to 70% of their investment in KFYield at favorable rates.  Mr. Williams further states that the remaining allegations of Paragraph 25 refer to Lendacy's marketing materials.  Mr. Williams refers to Lendacy's marketing materials for a complete and accurate statement of their contents.  To the extent the allegations of Paragraph 25 are not consistent with Lendacy's marketing materials, Mr. Williams denies the allegations.

26.     Mr. Williams admits that that in 2016 he moved from Florida to Puerto Rico in 2016 and began soliciting some potential accredited investors in Puerto Rico to invest in Kinetic Funds.

27.     Mr. Williams admits that Kinetic Investment Group, Mr. Williams and others raised approximately $39 million from approximately 30 accredited investors located mostly in Florida and Puerto Rico.

**B.      The Misrepresentations and Omissions**

28.     Denied.

a.      Mr. Williams denies that he made any oral or written material misrepresentations to accredited investors by allegedly stating that their money would be invested in income-producing U.S. listed financial products.  Mr. Williams further

states that the remaining allegations of Paragraph 28(a) refer to Subscription Agreement and Exhibits B-1 and C-1 to the Operating Agreement. Mr. Williams refers to the Subscription Agreement and Exhibits B-1 and C-1 to the Operating Agreement for a complete and accurate statement of their contents. To the extent the allegations in Paragraph 28(a) are not consistent with the Subscription Agreement and Exhibits B-1 and C-1 to the Operating Agreement, Mr. Williams denies the allegations.

b.      Mr. Williams denies that he made any oral or written material misrepresentations to accredited investors by advising accredited investors that their principal would be secure because the KFYield portfolio would be hedged with listed options. Mr. Williams further states that allegations of Paragraph 28(b) refer to Kinetic Funds' written marketing materials. Mr. Williams refers to Kinetic Funds' written marketing materials for a complete and accurate statement of their contents. To the extent the allegations in Paragraph 28(b) are not consistent with the Kinetic Funds' written marketing materials, Mr. Williams denies the allegations.

c.      Mr. Williams denies that he made any oral or written material misrepresentations to prospective accredited investors with respect to the Lendacy credit line product. Mr. Williams further states that allegations of Paragraph 28(c) refer to Kinetic Funds' and Lendacy's written marketing materials. Mr. Williams refers to Kinetic Funds' and Lendacy's written marketing materials for a complete and accurate statement of their contents. To the extent the allegations in Paragraph 28(c) are not consistent with the Kinetic Funds' and Lendacy's written marketing materials, Mr. Williams denies the allegations.

       d.    Mr. Williams denies that he made any oral or written material misrepresentations regarding the liquidity of KFYield assets.  Mr. Williams states that allegations of Paragraph 28(d) refer to Kinetic Funds' written brochures.  Mr. Williams refers to Kinetic Funds' written brochures for a complete and accurate statement of their contents.  To the extent the allegations in Paragraph 28(d) are not consistent with the Kinetic Funds' brochures, Mr. Williams denies the allegations.

29.    Denied.

     a.    Denied.

     b.    Denied.

     c.    Denied.

     d.    Denied.

30.    Denied.

31.    Denied.

**C.**    **The Misappropriation of Investor Funds**

32.    Denied.

33.    Mr. Williams denies that he used $37,000 of KFYield investor funds to pay off the mortgage on his relative's house.  Answering further, Mr. Williams admits that his relative did not grant Lendacy a mortgage or provide other consideration to Lendacy, but state that Mr. Williams invested $60,000 in KFYield.  Mr. Williams further states that the remaining allegations of Paragraph 33 refer to a Credit Facility Agreement dated April 29, 2015.  Mr. Williams refers to the Credit Facility Agreement dated April 29, 2015 for a complete and accurate statement of its contents.  To the extent the allegations of Paragraph 33 are not

consistent with the Credit Facility Agreement dated April 29, 2015, Mr. Williams denies the allegations.

34.     Mr. Williams admits only that in March 2017 he purchased three apartments and two parking spaces in San Juan, Puerto Rico. Answering further, Mr. Williams states that he invested over $1.5 million in KFYield. Mr. Williams denies the remaining allegations contained in Paragraph 34.

35.     Mr. Williams admits only that he executed a Lendacy Credit Facility Agreement for a $1,517,000 credit line.   Mr. Williams denies that he used KFYield funds to pay for San Juan properties referenced in Paragraph 35.  Mr. Williams further states that the allegations of Paragraph 35 refer to a Credit Facility Agreement.  Mr. Williams refers to the Credit Facility Agreement for a complete and accurate statement of its contents.  To the extent the allegations of Paragraph 35 are not consistent with the Credit Facility Agreement, Mr. Williams denies the allegations.  Mr. Williams denies the remaining allegations contained in Paragraph 35.

36.     Mr. Williams admits only that Scipio purchased a historic bank building in Old San Juan, Puerto Rico in May 2018.  Mr. Williams further states that the allegations of Paragraph 36 refer to a Credit Facility Agreement.  Mr. Williams refers to the Credit Facility Agreement for a complete and accurate statement of its contents.  To the extent the allegations of Paragraph 36 are not consistent with the Credit Facility Agreement, Mr. Williams denies the allegations.  Mr. Williams denies the remaining allegations contained in Paragraph 36.

37.     Mr. Williams admits only that he did not guarantee repayment of the loan referenced Paragraph 37.  Answering further, Mr. Williams states that the loan has been repaid

in its entirety with interest.  Mr. Williams further states that the allegations of Paragraph 37 refer to two Credit Facility Agreements.  Mr. Williams refers to the Credit Facility Agreements for a complete and accurate statement of their contents.  To the extent the allegations of Paragraph 37 are not consistent with the Credit Facility Agreements, Mr. Williams denies the allegations.  Mr. Williams denies the remaining allegations contained in Paragraph 37.

38.    Mr. Williams denies there are $6.8 million in outstanding loans to Mr. Williams or any of his entities.  Mr. Williams is without knowledge of the remaining allegations in Paragraph 38 and therefore denies the remaining allegations in Paragraph 38.

**D.    The Undisclosed Conflicts of Interest**

39.    Denied.

    a.    Denied.

    b.    Denied.

    c.    Denied.

40.    Denied.

41.    Denied.

**V.    CLAIMS FOR RELIEF**

**COUNT I**

**VIOLATION OF SECTION 17(a)(1) OF THE SECURITIES ACT**

42.    Mr. Williams incorporates into this allegation his responses set forth above in Paragraphs 1 through 41 as if fully set forth herein.

43.    Denied.

44.    Denied.

11

## COUNT II

## VIOLATION OF SECTION 17(a)(2) OF THE SECURITIES ACT

45.    Mr. Williams incorporates into this allegation his responses set forth above in Paragraphs 1 through 41 as if fully set forth herein.

46.    Denied.

47.    Denied.

## COUNT III

## VIOLATION OF SECTION 17(a)(3) OF THE SECURITIES ACT

48.    Mr. Williams incorporates into this allegation his responses set forth above in Paragraphs 1 through 41 as if fully set forth herein.

49.    Denied.

50.    Denied.

## COUNT IV

## VIOLATION OF SECTION 10(b) AND RULE 10b-5(a) OF THE EXCHANGE ACT

51.    Mr. Williams incorporates into this allegation his responses set forth above in Paragraphs 1 through 41 as if fully set forth herein.

52.    Denied.

53.    Denied.

## COUNT V

## VIOLATION OF SECTION 10(b) AND RULE 10b-5(b) OF THE EXCHANGE ACT

54.    Mr. Williams incorporates into this allegation his responses set forth above in Paragraphs 1 through 41 as if fully set forth herein.

55.     Denied.

56.     Denied.

## COUNT VI

### VIOLATION OF SECTION 10(b) AND RULE 10b-5(c) OF THE EXCHANGE ACT

57.     Mr. Williams incorporates into this allegation his responses set forth above in Paragraphs 1 through 41 as if fully set forth herein.

58.     Denied.

59.     Denied.

## COUNT VII

### VIOLATION OF SECTION 206(1) OF THE ADVISERS ACT

60.     Mr. Williams incorporates into this allegation his responses set forth above in Paragraphs 1 through 41 as if fully set forth herein.

61.     Paragraph 61 states legal, administrative, or procedural conclusions as interpreted by the SEC, and for which no response is required.  To the extent a response is required, Mr. Williams denies the allegations of Paragraph 61.

62.     Denied.

63.     Denied.

## COUNT VIII

### (Alleged in the Alternative to Count VII as to Williams only)

### ADDING AND ABETTING VIOLATIONS OF SECTION 206(1) OF THE ADVISERS ACT

64.     Mr. Williams incorporates into this allegation his responses set forth above in Paragraphs 1 through 41 as if fully set forth herein.

13

65.    Denied.

66.    Denied.

## COUNT IX

### VIOLATION OF SECTION 206(2) OF THE ADVISERS ACT

67.    Mr. Williams incorporates into this allegation his responses set forth above in Paragraphs 1 through 41 as if fully set forth herein.

68.    Denied.

69.    Denied.

## COUNT X

### (Alleged in the Alternative to Count IX as to Williams only)

### ADDING AND ABETTING VIOLATIONS OF SECTION 206(2) OF THE ADVISERS ACT

70.    Mr. Williams incorporates into this allegation his responses set forth above in Paragraphs 1 through 41 as if fully set forth herein.

71.    Denied.

72.    Denied.

## COUNT XI

### VIOLATION OF SECTION 206(4) AND RULE 206(4)-8(a)(1) OF THE ADVISERS ACT

73.    Mr. Williams incorporates into this allegation his responses set forth above in Paragraphs 1 through 41 as if fully set forth herein.

74.    Paragraph 74 states legal, administrative, or procedural conclusions as interpreted by the SEC, and for which no response is required.  To the extent a response is required, Mr. Williams denies the allegations of Paragraph 74.

75.    Denied.

76.    Denied.

## COUNT XII

**(Alleged in the Alternative to Count XI as to Williams only)**

**ADDING AND ABETTING VIOLATIONS OF
SECTION 206(4) AD RULE 206(4)-8(a)(1) OF THE ADVISERS ACT**

77.    Mr. Williams incorporates into this allegation his responses set forth above in Paragraphs 1 through 41 as if fully set forth herein.

78.    Denied.

79.    Denied.

## COUNT XIII

**VIOLATION OF SECTION 206(4) AND RULE 206(4)-8(a)(2) OF THE
ADVISERS ACT**

80.    Mr. Williams incorporates into this allegation his responses set forth above in Paragraphs 1 through 41 as if fully set forth herein.

81.    Denied.

82.    Denied.

## COUNT XIV

**(Alleged in the Alternative to Count XIII as to Williams only)**

**ADDING AND ABETTING VIOLATIONS OF
SECTION 206(4) AD RULE 206(4)-8(a)(2) OF THE ADVISERS ACT**

83.    Mr. Williams incorporates into this allegation his responses set forth above in Paragraphs 1 through 41 as if fully set forth herein.

84.    Denied.

85.    Denied.

## COUNT XV

### Unjust Enrichment (as to Relief Defendants)

86.    Mr. Williams incorporates into this allegation his responses set forth above in Paragraphs 1 through 41 as if fully set forth herein.

87.    Denied.

88.    Denied.

## VI.    RELIEF REQUESTED

Mr. Williams denies that the SEC is entitled to any of the damages, costs, expenses, and other relief set forth in the Complaint, and denies all liability to the SEC.

## AFFIRMATIVE DEFENSES

Mr. Williams repeats, realleges, and incorporates herein by reference his responses to the allegations in Paragraphs 1 through 88 of the Complaint and plead his Affirmative Defenses, without assuming the burden of proof when the law places that burden upon the SEC, and without prejudice to his Answer.  Mr. Williams has not knowingly or intentionally waived ay applicable affirmative defenses and reserves the right to assert and rely upon such other affirmative defenses as may become available or apparent during discovery.  Mr. Williams further reserves the right to amend his Answer and/or Affirmative Defenses accordingly and/or delete Affirmative Defenses that Mr. Williams determines during the

16

course of discovery are not applicable.

## FIRST AFFIRMATIVE DEFENSE
### (Statute of Limitations)

The SEC's claims against Mr. Williams are barred in whole or in part by the applicable

statute of limitations, including 28 U.S.C § 2462.

## SECOND AFFIRMATIVE DEFENSE
### (Good Faith Reliance on Advice of Expert Professionals)

The SEC's claims against Mr. Williams fail in whole or in part because Mr. Williams,

in allegedly doing the acts complained of, relied in good faith upon the information, opinions,

advice, reports, or statements made by attorneys, certificated public accountants, auditors, and

other expert professionals.

## THIRD AFFIRMATIVE DEFENSE
### (Bespeaks Caution Doctrine)

The SEC's claims against Mr. Williams fail in whole or in part because Mr. Williams'

alleged misstatements were forward-looking and were accompanied by meaningful cautionary

statements and risk disclosures, so as to be non-actionable under, among other things, the

bespeaks caution doctrine.  Mr. Williams' alleged misstatements or judgments constitute

expressions of honest opinion or corporate optimism.

## FOURTH AFFIRMATIVE DEFENSE
### (Statements Made in Good Faith)

The SEC's claims against Mr. Williams fail in whole or in part because the alleged

misstatements were made in good faith, in the belief that such statements were accurate, that

there was no omission of a material fact required to be disclosed or necessary to make any such

statements not misleading, and that such statements were proper in all respects.

## FIFTH AFFIRMATIVE DEFENSE
### (Lack of Scienter)

The SEC's claims against Mr. Williams fail in whole or in part because he did not act with the state of knowledge or intent necessary to give rise to liability. No act or omission of Mr. Williams was malicious, willful, wanton, reckless or made with intent to violate any statute or law. Mr. Williams acted at all relevant times in good faith, without scienter, and without actual knowledge that any of the alleged statements or omissions were false or misleading.

## SIXTH AFFIRMATIVE DEFENSE
### (No Fraudulent Conduct)

The SEC's claims against Mr. Williams fail in whole or in part because he never obtained money or property by means of knowingly or negligently making or using untrue statements of material fact and/or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

## SEVENTH AFFIRMATIVE DEFENSE
### (No Materiality)

The SEC's claims against Mr. Williams fail in whole or in part because any alleged false statements, omissions or claims were immaterial.

## EIGHTH AFFIRMATIVE DEFENSE
### (Compliance with Laws)

The SEC's claims against Mr. Williams fail in whole or in part because Mr. Williams' conduct was in compliance with, or authorized by, laws or regulations administered by a regulatory body or officer acting under state or federal statutory authority.

## NINTH AFFIRMATIVE DEFENSE
### (Acts By Third Parties)

The SEC's claims against Mr. Williams fail in whole or in part because the occurrences alleged in the Complaint and all damages, if any, resulting therefrom were caused by the acts or omissions of third parties over whom Mr. Williams had no control, including, but not limited to the Receiver appointed in this matter and market forces. Mr. Williams' conduct was not the proximate cause of any of the investor losses alleged by the SEC.

## TENTH AFFIRMATIVE DEFENSE
### (Information From Other Sources)

The SEC's claims against Mr. Williams fail in whole or in part because any alleged false or misleading statements referenced in the Complaint were based on information supplied by other sources, which information Mr. Williams believed to be true.

## ELEVENTH AFFIRMATIVE DEFENSE
### (No Likelihood of Future Violations)

The SEC's claim for injunctive relief is unavailable because (a) there has been no violation of the securities laws, (b) any violations of law that may have occurred were not egregious, and (c) there is no likelihood of any future violations of securities law. Thus, the SEC cannot establish that there is a reasonable likelihood that Mr. Williams would violate the securities laws in absence of injunctive relief.

## TWELFTH AFFIRMATIVE DEFENSE
### (No Ill-Gotten Gains)

The SEC's claim for discouragement should not be granted because Mr. Williams did not receive profits, ill-gotten gains or any form of pecuniary benefit that was derived from the alleged misconduct.

## THIRTEENTH AFFIRMATIVE DEFENSE
### (No Duty to Disclose)

The SEC's claims against Mr. Williams fail in whole or in part because Mr. Williams had no duty, under federal securities laws or otherwise, to disclose the information that the Complaint alleges was omitted or misstated.

WHEREFORE, having answered the SEC's Complaint, Mr. Williams respectfully request that this Court enter judgment in favor of Mr. Williams and against the SEC on all claims, and that the Court award Mr. Williams such other and further relief as the Court deems just and proper, including attorneys' fees and costs, and all other relief to the extent permitted by law.

Dated: April 27, 2020                              Respectfully submitted,

                                                   /s/ Gregory W. Kehoe
                                                   Gregory W. Kehoe (FBN 0486140)
                                                   kehoeg@gtlaw.com
                                                   Danielle Kemp (FBN 474355)
                                                   kempd@gtlaw.com
                                                   Joseph Picone (FBN 118381)
                                                   piconej@gtlaw.com
                                                   **GREENBERG TRAURIG, P.A.**
                                                   101 East Kennedy Blvd., Suite 1900
                                                   Tampa, FL 33602
                                                   Telephone:  (813) 318-5700
                                                   Facsimile:   (813) 318-5900

                                                   /s/ Steven M. Malina
                                                   (Pro Hac Vice)
                                                   Steven M. Malina
                                                   Illinois Bar No. 6196571
                                                   **GREENBERG TRAURIG, P.A.**
                                                   77 West Wacker Drive
                                                   Suite 3100
                                                   Chicago, IL 60601
                                                   Telephone: (312) 456-8400
                                                   Facsimile: (312) 456-8435
                                                   malinas@gtlaw.com

*Attorneys for Defendants and Relief Defendants*

## CERTIFICATE OF SERVICE

I CERTIFY that on April 27, 2020 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send notice to electronic filing to counsel of record.

*/s/ Gregory W. Kehoe*
Attorney