# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

SECURITIES AND EXCHANGE COMMISSION,

      Plaintiff,

v.

KINETIC INVESTMENT GROUP, LLC and
MICHAEL SCOTT WILLIAMS,          CASE NO.: 8:20-cv-394

      Defendants, and

KINETIC FUNDS I, LLC,
KCL SERVICES, LLC d/b/a LENDACY,
SCIPIO, LLC, LF 42, LLC, EL MORRO
FINANCIAL GROUP, LLC, and KIH, INC.,
f/k/a KINETIC INTERNATIONAL, LLC,

      Relief Defendants.

_____/

## RECEIVER'S FIRST INTERIM OMNIBUS APPLICATION FOR ALLOWANCE AND PAYMENT OF PROFESSIONALS' FEES AND REIMBURSEMENT OF EXPENSES FOR MARCH 6, 2020 - MARCH 31, 2020[1]

Mark A. Kornfeld, Esq., in his capacity as the court-appointed Receiver (the "Receiver") for Defendant Kinetic Investment Group, LLC and Relief Defendants Kinetic Funds I, LLC, KCL Services, LLC d/b/a Lendacy, Scipio, LLC, LF 42, LLC, El Morro Financial Group, LLC, and KIH Inc., f/k/a Kinetic International, LLC (collectively, the "Receivership Defendants"), moves this Court for the entry of an order awarding fees and reimbursement of costs to the Receiver and his professionals whose retention has been approved by the Court. *See* Docs. 41-43, 47. This motion covers all fees and costs incurred

---

[1] See Order Appointing Receiver (Doc. 34) at ¶ 54.

from the Receiver's date of appointment, March 6, 2020, through March 31, 2020 (the "Application Period"). The Securities and Exchange Commission's (the "SEC" or "Commission") Standardized Fund Accounting Report ("SFAR") for this period is attached hereto as **Exhibit 1**. In support thereof, the Receiver states as follows:

## I.      Preliminary Statement

The Receiver seeks Court approval to pay the sum of $204,650.82 to the professionals engaged by the Receiver for fees incurred and reimbursement of $6,520.64 in expenses for a total payment of $211,171.46. This Application includes time billed from March 6, 2020 (the day the Court appointed the Receiver) through March 31, 2020. The professionals who seek payment hereunder have agreed not to bill their time incurred prior to the Receiver's appointment and have collectively discounted their fees by over $100,000 off their regular rates.

This is an extremely complex receivership involving the interrelated and simultaneous operation of multiple sub-funds in a hedge fund structure, a purportedly independent-yet-intertwined and financially-related lending platform, and the misuse of investor funds to purchase at least two parcels of real estate and fund and bankroll the operation of at least three companies in Puerto Rico. To add to the complicated nature of this appointment, the Receiver was also appointed just days before the World Health Organization declared the COVID-19 outbreak a global pandemic which has caused unprecedented turmoil and disruption to nearly every facet of life. Despite these challenges, the Receiver and his retained professionals have worked expeditiously and efficiently to provide valuable services and secure investor assets,

have billed at significantly reduced rates, and are entitled to reasonable payment of the fees and reimbursement of their expenses.

For the time covered by this Motion[2], among other things, the Receiver and his professionals have accomplished the following:

- Seized and secured an office used by the Receivership Defendants in Sarasota, Florida, including documents and computers located in that office and used by employees as well as a safe containing physical gold holdings estimated to be in excess of $100,000;

- Seized and secured a historic former bank building previously purchased by Receivership Defendant Scipio, LLC in San Juan, Puerto Rico. The Receiver has taken steps, despite the world economic shutdown, to appraise and evaluate the potential and eventual sale of that asset worth over seven figures;

- Retained and engaged professionals to assist the Receiver with executing his duties under the Order Appointing Receiver including legal, information technology, forensic accounting, tax, investigative, and locksmith professionals;

- Worked with information technology and forensic professionals to retrieve, secure, and prepare over 1 million documents from multiple sources for ongoing review and analysis;

- Established Receivership bank accounts for each of the Receivership Defendants;

- Worked directly with counsel for Defendant Michael Williams ("Williams") to attempt to obtain relevant information;

- Served the Order Appointing Receiver and freezing the assets of the Receivership Defendants and Defendants Williams and Kinetic Investment Group (collectively, the "Defendants") on over seven dozen individuals and entities who the Receiver determined may have assets and/or records belonging to Receivership Defendants;

- Analyzed the complex labyrinth of interrelated ownership and corporate structure of many entities established by Williams and which were allegedly used to siphon off and/or improperly convert assets for his own personal benefit;

- Began his review and preparation of claims to recover investor assets wrongfully misappropriated and/or fraudulently transferred;

---

[2] Neither the Receiver nor his attorneys charged for the time spent preparing this motion.

- Worked with financial and brokerage institutions to freeze (and where necessary, liquidate) funds in the total amount of approximately $20 million of which approximately $7.6 million has been deposited into accounts in the name of the Receiver[3];

- Worked with forensic accountants and other professionals to analyze and evaluate, among other things, the performance of the multiple portfolios, the relevant disclosures, income purportedly generated by fund performance, total redemptions, and the utilization of margin borrowing at Interactive Brokers;

- Investigated the existence, payment history, and current status of more than two dozen loans made to investors and non-investors through Lendacy;

- Investigated potential self-dealing transactions involving Mr. Williams and entities he controlled, owned and or was otherwise affiliated with (either directly or indirectly), as well as other "off book" transactions;

- Interviewed numerous individuals including employees, vendors, investors, legal counsel, and other interested parties;

- Sought and obtained access to various financial accounts previously or currently used by various Receivership Defendants, and/or controlled by Williams;

- Fielded calls from Kinetic Funds investors, and sent correspondence providing formal notice to all known Kinetic Funds investors informing them of this Receivership; and

- Established an informational website at www.kineticreceivership.com for investors and other interested parties.

The above activities are discussed in more detail in the Receiver's First Interim Report which was filed on April 30, 2020 (Doc. 60) (the "Interim Report") and contains comprehensive and detailed information regarding the case background and status; the recovery and disposition of assets; financial information on Receivership Entities; the proposed course of action to be

---

[3] As further detailed in Section IV.A, *infra*, it appears that the total amount available for withdrawal from the relevant Kinetic Funds accounts at Interactive Brokers is approximately $5 million given the existence of a negative margin balance of approximately $7.7 million in an account that appears to have been accrued for the benefit of Kinetic Funds.

taken regarding assets in the Receivership estate; and potential and/or contemplated litigation involving Receivership Entities. The Receiver incorporates the Interim Report into this Application and attaches a true and correct copy of the Interim Report as **Exhibit 2** for the Court's convenience.

## II.    Background

On February 20, 2020, the Commission filed a complaint (Doc. 1) (the "Complaint") in the United States District Court for the Middle District of Florida (the "Court") against the Defendants Kinetic Investment Group, LLC and Michael S. Williams and Relief Defendants Kinetic Funds I, LLC, KCL Services, LLC d/b/a Lendacy, Scipio, LLC, LF 42, LLC, El Morro Financial Group, LLC, and KIH Inc., f/k/a Kinetic International, LLC, alleging that the Defendants violated the Securities Act of 1933, the Securities Exchange Act of 1934, and the Investment Advisers Act of 1940 by making false or materially misleading representations to investors and that over $6 million of investor funds was misappropriated to fund other business ventures and pay for other unauthorized expenses. Doc. 1.

According to the Complaint, the scheme involved securities offerings made on behalf of Relief Defendant Kinetic Funds I, LLC ("Kinetic Funds"), a purported hedge fund with a sub-fund structure managed by Defendants Kinetic Investment Group, LLC ("Kinetic Investment") and Williams. Defendants represented to investors that the largest sub-fund, Kinetic Funds Yield ("KFYield"), invested all of its assets in income-producing U.S. listed financial products hedged by listed options. *Id.* ¶ 2. Potential investors were told that KFYield was a liquid investment that would "maintain 90% principle [sic] protection" and that an investor could redeem their principal investment "100%...without penalties" with a 30-day

written notice. *Id.* ¶¶ 2, 28. Investors in the KFYield fund, which attracted the near-entirety of investor funds, were also often provided with documentation from Bloomberg's reporting service containing claims about KFYield's performance including that the fund had achieved positive annual returns every year since inception. Many, but not all, KFYield investors were also attracted to the investment opportunity given the advertised ability to simultaneously obtain a low-interest loan at the time of their investment from Relief Defendant KCL Services d/b/a Lendacy ("Lendacy") based on the amount of their KFYield investment. Investors understood that Lendacy was separate from Kinetic Funds and utilized its own private funding source to make the low-interest loans.

On March 6, 2020, the Court granted the Commission's Motion for Appointment of Receiver and entered an Order appointing Mark A. Kornfeld as the Receiver over Defendant Kinetic Investment Group, LLC and the Relief Defendants ("Order Appointing Receiver") (Doc. 34). The Receiver's preliminary investigation has uncovered evidence supporting the Commission's allegations that Defendants made a number of misrepresentations relating to the promised and actual use of investor funds and the performance of the Kinetic Funds portfolios. The Receiver's preliminary forensic accounting also shows that at least $6 million of investor funds that were earmarked for investment in the KFYield portfolio were either misappropriated or otherwise diverted to other projects and expenses unrelated to the Kinetic Funds investment opportunity.

Relevant to this Application, the Order Appointing Receiver authorizes the Receiver to appoint professionals to assist him in "exercising the power granted by this Order …" See Order Appointing Receiver at ¶ 52. Moreover, the Receiver and his professionals are entitled

to reasonable compensation from the assets of the Receivership Defendants, subject to approval of the Court. *Id.* ¶ 53.

### III.   Professional Services

Paragraph 52 of the Order Appointing Receiver provides that:

the Receiver is authorized to solicit persons and entities ("Retained Personnel") to assist him in carrying out the duties and responsibilities described in this Order. The Receiver shall not engage any Retained Personnel without first obtaining an Order of the Court authorizing such engagement.

Pursuant to Paragraph 52, the Receiver sought and obtained the Court's approval to engage the following Retained Personnel to assist him in carrying out his duties and responsibilities in the Order Appointing Receiver:

1.   Quarles & Brady LLP, to provide legal services (Doc. 41);

2.   Yip & Associates to provide forensic accounting services (Doc. 43);

3.   E-Hounds, Inc. to provide information technology and forensic technology services (Doc. 42);

4.   PDR Certified Public Accountants to provide tax accounting services (Doc. 47);

5.   K. Tek to prepare a website for interested parties (Doc. 47);

6.   Peters, LaPlaca, and Fuste to provide legal services in Puerto Rico as necessary (Doc. 41);

7.   SupportPR to provide information technology and forensic technology services in San Juan, Puerto Rico as necessary (Doc. 42);

8.   Investigative Solutions to provide investigative services in San Juan, Puerto Rico as necessary (Doc. 42); and

9.   Various locksmith services in Sarasota, FL and San Juan, Puerto Rico (Doc. 42).

(Collectively, the "Retained Personnel" or "Professionals"). As described in the Interim Report, the Professionals have provided services and incurred expenses to investigate the affairs of the Receivership Entities, preserve the Receivership assets, and attempt to locate and recover additional assets. These services are for the benefit of defrauded investors, creditors, and other interested parties of the Receivership Entities. The Receiver has not previously sought the reimbursement of any fees or costs in this matter for himself or his Professionals. Due to the recoveries described herein, the Receiver represents there are funds available to pay professionals, which will not take away resources from operating, maintaining and preserving the assets of the Receivership Entities.

The Order Appointing Receiver directs the Receiver to "apply to the Court for compensation and expense reimbursement from the Receivership Estates" within forty-five days after the end of each calendar quarter and with at least thirty days prior notice of such application to the Commission. Doc. 34 ¶ 54. The Order further provides that the Receiver and Retained Personnel "are entitled to reasonable compensation and expense reimbursement from the Receivership Estates as described in the 'Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission' (the "Billing Instructions") agreed to by the Receiver." *Id.* ¶ 53. In accordance with the Billing Instructions, the Receiver states as follows:

(a) **Time period covered by the Application:** March 6, 2020 – March 31, 2020.

(b) **Date of Receiver's appointment:** March 6, 2020.

(c) **Date services commenced:** February 14, 2020[4].

_____

[4] As further set forth below, the Receiver and certain of his professionals were required to

**(d) Names and rates of all professionals:** See Exs. 5-6.

**(e) Interim or Final Application:** Interim.

**(f) Records supporting fee application:** See below.

The following exhibits are provided in accordance with the Billing Instructions:

<u>Exhibit 3</u>:   Receiver's Certification

<u>Exhibit 4</u>:   Total compensation and expenses requested; any amounts previously requested; and total compensation and expenses previously awarded

<u>Exhibit 5</u>:   Fee Schedule: Names and Hourly Rates of Professionals and Paraprofessionals & Total Amount Billed for each Professional and Paraprofessional[5]:

<u>Exhibit 5(a)</u>: Quarles & Brady LLP

<u>Exhibit 5(b)</u>: Peters, LaPlaca, and Fusté

<u>Exhibit 5(c)</u>: Yip & Associates

<u>Exhibit 5(d)</u>: E-Hounds

<u>Exhibit 5(e)</u>: International Intelligence Group, LLC

<u>Exhibit 6</u>:   The Professionals' time records for the time period covered by this Application, sorted in chronological order, including a summary and breakdown of the requested reimbursement of expenses:

<u>Exhibit 6(a)</u>: Quarles & Brady LLP

---

undertake significant efforts in the weeks prior to his appointment to prepare for the possibility of the Order Appointing Receiver being entered at or following the hearing on March 6, 2020. Neither the Receiver nor his professionals are seeking reimbursement for any fees or expenses incurred in the weeks leading up to March 6, 2020, which total more than $10,000.

[5] The Receiver later learned that the offices previously maintained by Receivership Entities in Puerto Rico had been abandoned. Additionally, PDR CPA advised the Receiver that it would not be submitting an invoice for any services provided during the reporting period. Accordingly, no compensation is sought on behalf of SupportPR or PDR CPA for this reporting period.

Exhibit 6(b): Peters, LaPlaca, and Fusté

Exhibit 6(c): Yip & Associates

Exhibit 6(d): E-Hounds

Exhibit 6(e): K-Tec

Exhibit 6(f): International Intelligence Group, LLC

Exhibit 6(g): Various Locksmiths

## IV.   Case Status

### (a)   Cash on hand

The amount of cash on hand in the Receivership bank accounts as of the date of filing this Application is $7,656,189.47. The Receiver has also liquidated certain Interactive Brokers accounts held by the Receivership Entities holding portfolios maintained by Kinetic Funds sub-funds (the "Kinetic IB Accounts") including KFYield which currently hold a total of $5,486,077 in net cash proceeds.[6] Assuming the margin balance held at Interactive Brokers is satisfied using the proceeds from the liquidation of the Kinetic IB Accounts (and excluding the Accounts Under Investigation), the amount of unencumbered funds in the receivership estate will be approximately $13,142,266.5 million.

---

[6] As discussed in further detail in Section IV.B.3. of the First Interim Report attached as **Exhibit 2**, the Receiver discovered a significant margin balance totaling over $7 million in one of the Kinetic Funds accounts held at Interactive Brokers which appears to be linked to (and subject to set off by) the Kinetic IB Accounts. Two other accounts held at Interactive Brokers under the Kinetic Funds account structure appear to hold a total of $5,584,475 as of the date of this application belonging to two investors and it has been represented to the Receiver that those accounts were purportedly independently managed by Williams and thus not related to the Kinetic IB Accounts (the "Accounts Under Investigation"). The Receiver is working with his forensic accounting professionals to better understand these relationships before taking any further action.

QB\62564405.5

**(b)** **Summary of the administration of the case**

Since his appointment on March 6, 2020, the Receiver has administered the case with the objective of efficiently fulfilling his duties under the Order Appointing Receiver while doing so as cost-effectively as possible by, wherever possible, leveraging the use of professionals with favorable rate structures. After initially prioritizing the securing and marshaling of assets for the benefit of creditors, the Receiver and his Professionals have focused on investigating the Receivership Entities' prior operations and performance. As of the date of this Application, the Receiver currently has frozen $13,142,266.5, of which the only disbursement to date has been the Receiver's payment of payroll totaling $8,496.20 to certain employees at the office used by Defendant Kinetic Investment Group, LLC in Sarasota, Florida for the time period from March 1, 2020 - March 15, 2020.[7] Given the early state of this matter, the Receiver is unable to offer an estimate as to when the case is expected to close.

**(c)** **Summary of creditor claims proceedings**

Given the early stages of his appointment, the Receiver has not yet established a formal claims process. The unique nature of the receivership case may present the need for multiple classifications of claims; however, any such classification would require Court approval and

---

[7] The Receiver discovered that in addition to the four employees working at the Sarasota Kinetic office, an additional individual named Ida Passalacqua was also receiving payroll from Kinetic Investment Group. The Receiver was not able to identify any substantive work or value being provided by Ms. Passalacqua's inclusion on the company payroll, at least for the period from March 1 - 15, 2020, and has also been informed that Ms. Passalacqua is or was in a romantic relationship with Defendant Williams. Accordingly, the Receiver determined to remove Ms. Passalacqua from the Kinetic Investment Group payroll for the March 1 - 15, 2020 reporting period until further information is learned about her addition to the company payroll.

the Receiver has not yet made any determination.  There also exists the possibility that non-investor claimants, such as third parties that provided services to the Receivership Entities, may also seek payment for the services provided and labor performed prior to the receivership. General trade creditors also may hold claims for their pre-receivership services. The Receiver foresees developing a comprehensive claims process to address and verify the various claims which will then be submitted to the Court for approval when finalized.

> **(d)     Description of assets**

In additional to the descriptions provided herein, for detailed information about the assets of the receivership estate, including the anticipated or proposed disposition of the assets, the Receiver respectfully refers the Court and interested parties to the Interim Report attached hereto as **Exhibit 2**.

> **(e)     Description of liquidated and unliquidated claims held by the Receiver**

Given the early nature of his appointment, the Receiver is still evaluating potential claims the Receivership Entities may have against third parties. These claims remain subject to the Receiver's ongoing investigation with the assistance of his legal and forensic professionals. The Receiver continues to review potential causes of action against the principals of the Receivership Defendants and various third parties. These claims may include common law claims and claims under fraudulent transfer statutes. While the Receiver cannot yet predict the likelihood, amount or cost-effectiveness of particular claims or the claims as a whole, the Receiver continues to diligently evaluate claims against third parties.

**IV.**     **Services Provided And Compensation Sought By The Professionals**

    **(a)**    **Services Provided By The Receiver And Quarles & Brady LLP**

The Receiver is a partner at the law firm of Quarles & Brady LLP ("Quarles & Brady") and co-chair of Quarles & Brady's Securities Litigation Practice Group. The Receiver has practiced law for nearly thirty years and has experience handling fraud recovery cases. The Receiver obtained Court approval to retain the services of Quarles & Brady to serve as his legal counsel. Quarles & Brady is a national full-service law firm with extensive experience in receiverships, commercial litigation, financial services, and regulatory matters. As an accommodation to the Receiver and the public interest nature of this matter, Quarles & Brady agreed to reduce the billing rate of its professionals for this case as provided in the Fee Schedule attached hereto as **Exhibit 5** which was, on average, more than 20% (and in some instances, closer to 30%) less than the customary rate charged to clients. For purposes of just this Application, these discounts resulted in a total reduction of nearly $100,000 from the rates customarily charged by Quarles & Brady attorneys to clients. The Receiver and Quarles & Brady also invested numerous hours in the weeks leading up to the March 6, 2020 hearing in order to be prepared if the Court granted the Commission's Motion for Appointment of Receiver. The Receiver and Quarles & Brady incurred these hours as a matter of public interest and are not seeking reimbursement for these pre-receivership fees.

The standard hourly rate which the Receiver charges clients is $625. However, the Receiver agreed that for purposes of his appointment as the Receiver, his hourly rate would be reduced to $437.50 per hour, representing approximately a thirty percent (30%) discount off the standard hourly rate which he charges clients in comparable matters. This rate was set

forth in the Commission's Motion to Appoint Receiver, which the Court granted on March 6, 2020 (Doc. 34). During the time covered by this motion, the Receiver expended 96.40 hours on this Receivership but only seems compensation for 86.4 of those hours. A copy of the statement summarizing the services rendered by the Receiver is attached hereto as **Exhibit 6(a)**. The Receiver requests the Court award him fees for the professional services rendered from March 6, 2020 through March 31, 2020, in the amount of $37,800.00.

During the period covered by this Application, Quarles & Brady billed 369.30 hours in assisting the Receiver in fulfilling his duties under the Order Appointing Receiver but only seeks compensation for 280.4 of those hours. The Receiver requests that the Court award Quarles & Brady fees for professional services rendered and costs incurred from March 6, 2020, through March 31, 2020, in the amounts of $75,127.00 and $1,619.92, respectively. The statement summarizing the services rendered by Quarles & Brady is also encompassed within **Exhibit 6(a)** attached hereto. The work performed by Quarles & Brady has been focused on investigating the fraud and related activities underlying this matter; locating and taking control of Receivership assets; and investigating and pursuing additional assets for the Receivership as detailed in the Interim Report. The Receiver requests the Court award Quarles & Brady fees for the professional services rendered from March 6, 2020 through March 31, 2020, in the amount of $76,746.92.

The Receiver and his legal professionals with Quarles & Brady provided these services to investigate the affairs of the Receivership Entities, preserve Receivership assets, and attempt to locate and recover additional assets. These services were incurred in connection with the administration of the Receivership and are for the benefit of aggrieved investors,

creditors, and other interested parties of the Receivership Entities. All of the services for which compensation is sought were rendered on behalf of the Receivership Entities and in furtherance of the duties of the Receiver, and in discharge of the Receiver's responsibilities under the Order Appointing Receiver.

      **(b)**    **Services Provided By Yip & Associates**

The Receiver obtained Court approval to retain the services of Yip Associates, experienced forensic accountants, to assist in investigating and analyzing the flow of funds both into and out of the various businesses operated by the Receivership Entities, and to assist in locating additional funds, if any. Yip & Associates has significant experience conducting forensic and fraud investigations in actions brought by state and federal regulators including the Securities and Exchange Commission. As set forth in the Receiver's Motion to Retain Yip & Associates, Yip & Associates agreed to reduce the rates of its professionals for this case. Hal Levenberg, a Director at Yip & Associates whose normal hourly rate charged to clients is $395, agreed to cap his rate at $295 which is the same rate charged by the Receiver's lead counsel, Jordan D. Maglich. Yip & Associates also agreed to discount the hourly rates charged by associates and senior associates from $195 to $245 to $175 and $220, respectively.

The nature and extent of work performed by Yip & Associates was complicated by the complex nature of the Defendants' multiple and overlapping business operations as well as the extraordinary impact of the COVID-19 pandemic and the unprecedented shutdown of many aspects of daily life. For example, the financial institution where the Receivership Defendants maintained their primary bank accounts informed the Receiver that it was unable to immediately provide the supporting documentation necessary for Yip & Associates'

forensic analysis and reconstruction of the Receivership banking information and that it did not expect to provide those documents until April 23, 2020 at the earliest. A delay of nearly six weeks without being able to understand the Receivership Defendants' financial transactions would have severely impacted the Receiver's ability to timely and effectively perform his duties under the Order Appointing Receiver. Thus, Yip & Associates' personnel (and the Receiver's legal professionals, where necessary) were forced to pursue other efforts to obtain the necessary supporting information and documentation to reconstruct the Receivership Entities' financial records, including the review of documents maintained by the Receivership Entities at its offices. Additionally, it became apparent that in addition to Kinetic Funds, which had at least 6 years of preceding banking and brokerage records, Defendants also operated at least three additional businesses which collectively received millions of dollars from various bank accounts maintained by Defendants including the account where investor contributions were deposited. Locating, reviewing, and understanding the financial circumstances and relationships between the various Receivership Entities has been extremely complex and time-consuming.

During the period covered by this Application, Yip & Associates billed 206.7 hours and seeks payment of fees in the sum of $49,666.50 and reimbursement of expenses in the sum of $494.00, for a total of $50,160.50. A copy of the statement summarizing the services rendered by Yip & Associates is attached hereto as **Exhibit 6(c)**. The Receiver requests the Court award Yip & Associates fees for the professional services rendered from March 6, 2020 through March 31, 2020, in the amount of $50,160.50.

**(c)      Services Provided By E-Hounds, Inc.**

The Receiver obtained Court approval to retain the services of E-Hounds, Inc. ("E-Hounds") to assist with managing and facilitating access to data imaged from electronic devices and hardware belonging to the Receivership Entities.  As set forth in the Receiver's Motion to Retain Information Technology Professionals (Doc. 38), E-Hounds principal Adam Sharp has extensive experience in this field and also with assisting court-appointed receivers including in matters brought by the SEC. As an accommodation to the Receiver, E-Hounds agreed not to charge an up-front retainer and provided preferred hourly rates ranging from $195 to $250 for customary forensic imaging tasks.  The Receiver has leveraged E-Hounds' lower rate structure to identify and preserve electronic data obtained from Receivership Entities' computer servers, electronic devices and paper files located at the Sarasota office and utilize the firm's review platform as a central review platform with no additional servicing or storage fees.  The Court granted the Receiver's Motion to retain E-Hounds on March 6, 2020 (Doc. 42).

Of note, a large portion of the professional services rendered by E-Hounds consisted of non-recurring tasks involved in locating, securing and imaging more than one million documents from the various electronic services and devices maintained by the Receivership Entities and obtained from other sources.  Other than the monthly charges for the use of E-Hounds centralized review platform and the potential recovery of three additional desktop computers currently in Mr. Williams' possession in Puerto Rico, the Receiver does not anticipate E-Hounds incurring any similarly extensive further substantive imaging or preservation services.  During the period covered by this Application, E-Hounds billed 125.25

hours and seeks payment of fees in the sum of $33,945.00 and reimbursement of expenses in the sum of $875.00, for a total of $34,820.00. A copy of the statement summarizing the services rendered by E-Hounds is attached hereto as **Exhibit 6(d)**. The Receiver requests the Court award E-Hounds fees for the professional services rendered from March 6, 2020 through March 31, 2020, in the amount of $34,820.00.

(d)     **Services Provided By Peters, LaPlaca, and Fusté**

Given the presence of Receivership Entities' offices and potential assets in San Juan, Puerto Rico, the Receiver obtained Court approval to retain Peters, LaPlaca, and Fusté (the "Fusté Firm"), which is based in San Juan, Puerto Rico. Counsel from the Fusté Firm were primarily used during the period covered by this Application for assisting the Receiver's counsel in locating and securing Receivership assets in San Juan, Puerto Rico immediately following entry of the Order Appointing Receiver as well as ensuring that the Order Appointing Receiver was timely filed in the United States District Court for the District of Puerto Rico. During the period covered by this Application, the Fusté Firm billed 20.3 hours and seeks payment of fees in the sum of $6,840.00 and reimbursement of expenses in the sum of $59.50, for a total of $6,899.50. A copy of the statement summarizing the services rendered by the Fusté Firm is attached hereto as **Exhibit 6(b)**. The Receiver requests the Court award the Fusté Firm fees for the professional services rendered from March 6, 2020 through March 31, 2020, in the amount of $6,899.50.

(e)     **Services Provided By International Intelligence Group, LLC**

Given the presence of Receivership Entities' offices and potential assets in San Juan, Puerto Rico, the Receiver obtained Court approval to retain International Intelligence Group,

LLC (the "IIG Firm") to assist the Receiver with executing his duties as it applies to any offices or assets located in Puerto Rico. IIG's principal, Hector Gonzales, is a retired supervisory Special Agent with the FBI with over twenty years of experience most recently in San Juan, Puerto Rico. Mr. Gonzales primarily assisted the Receiver during this Application period in locating and securing Receivership assets in San Juan, Puerto Rico immediately following entry of the Order Appointing Receiver as well as handling any day-to-day matters which were not economically feasible to be carried out by the Receiver's Florida-based professionals. During the period covered by this Application, the IIG Firm billed 4.67 hours and seeks payment of fees in the sum of $397.32 and reimbursement of expenses in the sum of $15.22, for a total of $412.54. A copy of the statement summarizing the services rendered by the IIG Firm is attached hereto as **Exhibit 6(f)**. The Receiver requests the Court award the IIG Firm fees for the professional services rendered from March 6, 2020 through March 31, 2020, in the amount of $412.54.

      **(f)**      **Services Provided By K. Tek Systems.**

The Receiver obtained Court approval to retain the services of K. Tek Systems ("K. Tek") to create a website to be used to communicate with interested parties including investors. Doc. 47. A website is often used by court-appointed fiduciaries to communicate with interested parties, and the Commission's Billing Instructions also contemplate that "when appropriate, the estate should promptly create a website…to provide information as to the activities and condition of the estate to investors." K. Tec has significant experience creating effective and cost-efficient websites for court-appointed receivers. Through these efforts, a

website located at www.kineticreceivership.com is now accessible to investors and interested parties and is regularly updated with court filings and other relevant information.

During the period covered by this Application, K. Tek billed the Receiver $3,820.00 as set forth in the invoices attached as **Composite Exhibit 6(e)**. Notably, the Receiver is informed that this amount will cover the upkeep, maintenance, and hosting for the Receivership website for the period from March 2020 to February 2021. At K. Tek's request and in order to expedite the completion of the website, the Receiver's law firm, Quarles & Brady, previously agreed to advance payment of the $3,820.00 billed in those invoices. The Receiver requests the Court authorize the payment (and reimbursement to Quarles & Brady) for the K. Tek invoices rendered from March 6, 2020 through March 31, 2020, in the amount of $3,820.00.

**(h)      Services Provided By Various Locksmith Professionals.**

The Receiver obtained Court approval to retain the services of Darrell's Locksmith in Sarasota, Florida and Abracadabra Attention in San Juan, Puerto Rico to assist with changing the locks at premises covered by the Order Appointing Receiver. Neither of these professionals were available on the day the Receiver's professionals traveled to Sarasota and Puerto Rico, respectively, to secure the appropriate offices and/or assets. As for Defendant Kinetic Investment Group, LLC's office located in Sarasota, Florida, a representative for the building's management group coordinated to meet the Receiver's professionals on the morning of Saturday, March 7, 2020 to change the front and back door locks at that office location and provided the invoice contained in **Composite Exhibit 6(g)** for $312.00 for those services (the "Sarasota Invoice"). In San Juan, Puerto Rico, the Receiver's local counsel was

able to secure the services of a local locksmith to assist in (i) accompanying the Receiver to the two offices previously maintained by Receivership Entities El Morro Financial, KCL Services d/b/a Lendacy, and KIH, Inc. f/k/a Kinetic International, LLC but which have since been deserted and closed; and (ii) changing the locks on the El Banco Espanol building located at 152 Tetuan Street and owned by Relief Defendant Scipio, LLC. For those services, the locksmith presented the Receiver with the invoice contained in **Composite Exhibit 6(g)** for $200.00 (the "Puerto Rican Invoice"). At the request of the Puerto Rican locksmith, the Receiver's law firm Quarles & Brady agreed to advance payment of the Puerto Rican Invoice. The Receiver requests the Court authorize the payment of the Sarasota Invoice and the reimbursement to Quarles & Brady for the Puerto Rican Invoice constituting services rendered from March 6, 2020 through March 31, 2020, in the total amount of $512.00.

## MEMORANDUM OF LAW

A receiver appointed by a court who reasonably and diligently discharges his duties is entitled to be fairly compensated for services rendered and expenses incurred. *See SEC v. Elliott*, 953 F.2d 1560 (11th Cir. 1992) ("[I]f a receiver reasonably and diligently discharges his duties, he is entitled to compensation."); *Donovan v. Robbins*, 588 F. Supp. 1268, 1272 (N.D. Ill. 1984) ("[T]he receiver diligently and successfully discharged the responsibilities placed upon him by the Court and is entitled to reasonable compensation for his efforts."); *SEC v. Custable*, 1995 WL 117935 (N.D. Ill. Mar. 15, 1995) (receiver is entitled to fees where work was of high quality and fees were reasonable); *SEC v. Mobley*, 2000 WL 1702024 (S.D.N.Y. Nov. 13, 2000) (court awarded reasonable fees for the receiver and his professionals). In determining reasonable compensation for the services rendered by the

QB\62564405.5

Receiver and his Professionals, the Court should consider the circumstances surrounding the receivership. *See Elliot*, 953 F.2d at 1577.

In addition to fees, the receiver is "also entitled to be reimbursed for the actual and necessary expenses" that the receiver "incurred in the performance of [its] duties." *Fed. Trade Comm'n v. Direct Benefits Grp., LLC*, 2013 WL 6408379, at *3 (M.D. Fla. 2013). The Receiver and his Professionals support their claims for reimbursement of expenses with "sufficient information for the Court to determine that the expenses are actual and necessary costs of preserving the estate." *SEC v. Kirkland*, 2007 WL 470417, at *2 (M.D. Fla. 2007) (citing *In re Se. Banking Corp.*, 314 B.R. 250, 271 (Bankr. S.D. Fla. 2004)).

Here, because of the nature of this case, it was necessary for the Receiver to employ attorneys, accountants, and professionals experienced and familiar with financial frauds, federal receiverships, securities laws, banking, finance, and trusts and estates. Further, in order to perform the services required and achieve the results obtained to date, the skills and experience of the Receiver and the Professionals in the areas of fraud, securities, computer and accounting forensics, and financial transactions were indispensable.

The Receiver and his legal, forensic, and information technology professionals have each discounted their normal and customary rates as an accommodation to the Receivership and to conserve Receivership assets. The rates charged by the attorneys and paralegals are at or below those charged by attorneys and paralegals of comparable skill from other law firms in the Middle District of Florida. As this is the Receiver's first motion for fees and costs, the Receiver and his Professionals have not received compensation for their services or for un-reimbursed out-of-pocket costs although they have worked diligently on this matter and

QB\62564405.5

continue to do so. This case has been time-intensive for the Receiver and his Professionals because of the need to resolve many issues rapidly and efficiently. The attached Exhibits detail the time, nature and extent of the professional services rendered by the Receiver and his Professionals for the benefit of investors, creditors, and other interested parties. The Receiver anticipates that additional funds will be obtained through the Receiver's negotiations or litigation with third parties.

The Receiver is sensitive to the need to conserve the Receivership Entities' assets and respectfully submits that the fees and costs expended to date were reasonable, necessary, and benefited the Receivership. Notably, the Commission has no objection to the relief sought in this motion. *Custable*, 1995 WL 117935, *7 ("In securities law receiverships, the position of the SEC in regard to the awarding of fees will be given great weight.").

## CONCLUSION

Under the terms and conditions of the Order Appointing Receiver, the Receiver, among other things, is authorized, empowered, and directed to engage professionals to assist him in carrying out his duties and obligations. The Order further provides that he apply to the Court for authority to pay himself and his Professionals for services rendered and costs incurred. In exercising his duties, the Receiver has determined that the services rendered and their attendant fees and costs were reasonable, necessary, advisable, and in the best interest of the Receivership.

**WHEREFORE,** Mark A. Kornfeld, the Court-appointed Receiver, respectfully requests that this Court award the following sums and direct that payment be made from the Receivership assets:

| | |
|---|---|
| Mark A. Kornfeld and Quarles & Brady | $ 114,546.92 |
| Yip & Associates | $ 50,160.50 |
| E-Hounds | $ 34,820.00 |
| Peters, LaPlaca, and Fuste | $   6,899.50 |
| International Investigations, LLC | $     412.54 |
| K. Tek Systems | $   3,820.00 |
| Various Locksmiths | $     512.00 |

A proposed Order is attached as **Exhibit 7**.

**WHEREFORE**, the Receiver seeks entry of an Order granting this motion and awarding the Receiver and his professionals their interim fees, reimbursement of costs, and for such other relief that is just and proper.

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), the Receiver hereby certifies that he has conferred with counsel for Plaintiff, Securities and Exchange Commission. The Commission has indicated it does not oppose the requested relief    The Receiver has also conferred with counsel for Defendant Michael S. Williams, who has indicated he opposes the requested relief. A hearing is requested only in the event that someone files an objection thereto.

QUARLES  & BRADY LLP

*/s/ Jordan D. Maglich*
Jordan D. Maglich
Florida Bar No. 0086106
101 E. Kennedy Blvd., Ste. 3400
Tampa, FL 33602
Telephone:  (813) 387-0300
Facsimile:  (813) 387-1800
Jordan.maglich@quarles.com
docketfl@quarles.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 15th day of May, 2020, I electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF system which will send a Notice

of Electronic Filing to the following counsel of record:

| | |
|---|---|
| Christine Nestor, Esq. | Gregory W. Kehoe, Esq. |
| Stephanie N. Moot, Esq. | Joseph H. Picone, Esq. |
| John T. Houchin, Esq. | Danielle S. Kemp, Esq. |
| Barbara Veniegra, Esq. | Greenberg Traurig, P.A. |
| Securities and Exchange Commission | 101 East Kennedy Blvd., Suite 1900 |
| 801 Brickell Avenue, Suite 1950 | Tampa, FL 33602 |
| Miami, FL 33131 | keoeg@gtlaw.com |
| nestorc@sec.gov | piconej@gtlaw.com |
| moots@sec.gov | kempd@gtlaw.com |
| houchinj@sec.gov | *Counsel for Defendant Michael Williams* |
| viniegrab@sec.gov | |
| *Counsel for Plaintiff* | Steven M. Malina, Esq. |
| | Greenberg Traurig, P.A. |
| | 77 West Wacker Drive, Suite 3100 |
| | Chicago, IL 60601 |
| | malinas@gtlaw.com |
| | *Counsel for Defendant Michael Williams* |

*/s/ Jordan D. Maglich*
Attorney
