# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

**SECURITIES AND EXCHANGE COMMISSION,**

      **Plaintiff,**

**v.**

**KINETIC INVESTMENT GROUP, LLC and**
**MICHAEL SCOTT WILLIAMS,**        **CASE NO.: 8:20-cv-394**

      **Defendants, and**

**KINETIC FUNDS I, LLC,**
**KCL SERVICES, LLC d/b/a LENDACY,**
**SCIPIO, LLC, LF 42, LLC, EL MORRO**
**FINANCIAL GROUP, LLC, and KIH, INC.,**
**f/k/a KINETIC INTERNATIONAL, LLC,**

      **Relief Defendants.**

_____/

## RECEIVER'S SECOND INTERIM OMNIBUS APPLICATION FOR ALLOWANCE AND PAYMENT OF PROFESSIONALS' FEES AND REIMBURSEMENT OF EXPENSES FOR APRIL 1, 2020 - JUNE 30, 2020[1]

      Mark A. Kornfeld, Esq., in his capacity as the court-appointed Receiver (the "Receiver") for Defendant Kinetic Investment Group, LLC and Relief Defendants Kinetic Funds I, LLC, KCL Services, LLC d/b/a Lendacy, Scipio, LLC, LF 42, LLC, El Morro Financial Group, LLC, and KIH Inc., f/k/a Kinetic International, LLC (collectively, the "Receivership Defendants"), moves this Court for the entry of an order awarding fees and reimbursement of costs to the Receiver and his professionals whose retention has been approved by the Court. *See* Docs. 41-43, 47. This motion covers all fees and costs incurred

---

[1] See Order Appointing Receiver (Doc. 34) at ⁋ 54.

from April 1, 2020, through June 30, 2020 (the "Application Period"). The Securities and Exchange Commission's (the "SEC" or "Commission") Standardized Fund Accounting Report ("SFAR") for this period is attached hereto as **Exhibit 1**.   The Commission does not oppose this Motion.   Defendant Williams does not take a position on the Motion but has indicated he will not be filing any Opposition.   In support thereof, the Receiver states as follows:

I.   **Preliminary Statement**

The Receiver seeks Court approval to pay the sum of $296,239.39 to the professionals engaged by the Receiver for fees incurred and reimbursement of $9,513.70 in expenses for a total payment of $305,753.09.   This Application includes time billed for the three-month period from April 1, 2020 through June 30, 2020.   The professionals who seek payment hereunder have made various accommodations given the public interest nature of this appointment, including providing a discount to their normally-charged rates, agreeing to seek payment of fees on a quarterly basis, and not seeking payment for any time incurred prior to the Receiver's appointment.

This is an extremely complex receivership involving the interrelated and simultaneous operation of multiple sub-funds in a hedge fund structure, a purportedly independent-yet-intertwined and financially-related lending platform, and the use of investor funds to purchase at least two parcels of real estate and fund the operation of at least three companies in Puerto Rico.   The Receiver has also faced challenges in carrying out his duties given the current COVID-19 pandemic.   Despite these challenges, the Receiver and his retained professionals have worked expeditiously and efficiently to provide valuable services and secure investor

QB\63825679.2

assets, have billed at significantly reduced rates, and are entitled to reasonable payment of the fees and reimbursement of their expenses.

For the time covered by this Motion[2], the Receiver and his retained professionals have performed extensive and valuable services on behalf of the Receivership estate which include, but are not limited to, the following:

### 1.      Motion for Turnover

- The Receiver filed a Motion for Turnover of a Puerto Rico luxury apartment complex previously purchased by Defendant Williams in May 2017 for approximately $1.7 million which he used as his personal residence and for his personal benefit.  The Receiver determined that the complex was purchased with Kinetic Funds' investor monies (Doc. 72). Through a resolution reached by the Receiver and Williams' counsel that was memorialized in a stipulation filed on July 6, 2020, and approved by the Court on July 8, 2020 (Doc. 105), the Motion for Turnover was resolved by consent and resulted in the agreement to transfer title to the apartment complex and associated parking spaces from Williams to the Receiver.  At some point in the future, the Receiver may seek to liquidate these assets to cash, which would then be part of monies he hopes to distribute back to investors.

### 2.      Sale of Gold

- The Receiver secured and liquidated gold coins located in the Sarasota Office in a process that obtained bids from seven local and national businesses and ultimately resulted in the receipt of over $200,000 in proceeds for the Receivership Estate.

### 3.      Efforts to Market and Liquidate the El Banco Espanol Building in San Juan, Puerto Rico

- The Receiver undertook an analysis of a potential sale of the historic El Banco Espanol building located in San Juan Puerto Rico and purchased by Mr. Williams with monies directly traceable to Kinetic Funds investors.  These efforts included obtaining several appraisals, interviewing potential real estate brokers, reviewing and soliciting offers, analyzing the commercial and general real estate market in Puerto Rico, and assessing the most cost-efficient method for liquidating the asset, and maximizing the recovery for investors.  The Receiver's efforts are ongoing and his primary consideration is to

---

[2] Neither the Receiver nor his attorneys charged for the time spent preparing this motion.

liquidate the building in a manner that results in the highest possible proceeds to the Receivership Estate.

### 4.    Successfully Opposed Mr. Williams' Motion for Emergency Relief

- The Receiver filed a Response to Defendant Williams' Emergency Motion for Clarification (Doc. 54) opposing Williams' efforts to unfreeze a significant amount of funds frozen pursuant to the Court's entry of asset freeze orders on March 6, 2020. The Court largely denied the Motion and left the freeze in place with respect to a majority of the funds sought to be unfrozen.

### 5.    The First Interim Report

- The Receiver prepared and filed his First Interim Report (Doc. 60), which provided a comprehensive summary, analysis, and supporting documentation of the Receiver's initial investigation as well as the tracing of investor funds.

### 6.    The Receiver's Liquidation Plan

- The Receiver prepared and filed his Liquidation Plan setting forth a plan for the fair, reasonable, and efficient recovery and liquidation of all remaining, recovered, and recoverable Receivership Property (Doc. 92).

### 7.    Analysis of and Motion to Repay Margin Obligations at Interactive Brokers

- The Receiver and his professionals continued to research, review, and analyze nearly a decade worth of investor and bank statements, documents reflecting Kinetic Funds' brokerage account relationships with Bank of America/Merrill Lynch and subsequently Interactive Brokers, and certain separate assets purportedly managed by Mr. Williams outside of the Kinetics Funds for the benefit of specific investors. The Receiver's investigation has resulted in the (i) liquidation of Kinetic Funds sub-accounts resulting in cash proceeds of approximately $13 million; (ii) identification of an additional approximately $10 million in securities positions in two separate accounts apparently held on behalf of two investors; and (iii) approximately $12 million in total margin debt across several sub-accounts including a sub-account containing a margin balance of nearly $8 million.

    The Receiver continued to analyze (among other things) the origin, source, and ultimate legal responsibilities for the repayment of the margin debt (in order to minimize ongoing and accruing interest payments) in order to be able to seek

authorization to transfer the maximum net proceeds into the Receiver's fiduciary account for the benefit of investors.[3]

## 8. Formulation and Determination of Equitable Claims Process and Procedures

- The Receiver and his professionals continued the forensic investigation of investor deposits and withdrawals in order to determine and formulate an equitable and efficient claims process for the Court's approval.

## 9. Lendacy

- The Receiver and his professionals continued their comprehensive analysis and tracing of loans, repayments, transfers, and outstanding balances for more than two dozen loans made to Kinetic investors and non-investor Kinetic employees and insiders, and assessed/analyzed the corresponding impact as part of the claims determination and methodologies processes being contemplated by the Receiver to ultimately be presented for the Court's approval.

## 10. Consent Judgment

- The Receiver entered into a Consent Judgment on behalf of the Receivership Entities in the underlying litigation which served to eliminate further expenditure of time and resources.

## 11. Administration of Monies in Response to Court Order

- The Receiver obtained Court approval for the transfer of approximately half a million dollars previously held in trust from Mr. Williams former law firm into the Receiver's separate, fiduciary bank account, for the purpose of administering Court-ordered monthly living expenses to Mr. Williams out of these proceeds instead of from current Receivership assets secured by the Receiver.

---

[3] Shortly after the conclusion of this reporting period, the Receiver filed his Motion to (i) Approve Determination of Brokerage Account Margin Obligation; (ii) Partially Liquidate Investor Accounts to Satisfy Margin Obligations; (iii) Repay Remaining Margin Balance; and (iv) Transfer Majority of Remaining Receivership Cash Assets to Fiduciary Bank Accounts (Doc. 108). The Receiver filed that Motion seeking to have the Court approve the conclusions from his investigation and to potentially avoid spending nearly $6 million in investor funds to cover non-receivership margin obligations. That Motion remains pending.

QB\63825679.2

12.     **Litigation Claims**

- The Receiver continued to analyze potential litigation claims against third parties that may have received funds from or otherwise provided services to or for the benefit of any Receivership Entities.

13.     **Continued Investigation And Review of Relevant Documentation and Information**

- The Receiver and his professionals continued their investigation of the business operations of the various Receivership Entities.  This included identifying, obtaining, and reviewing relevant documentation and information from the Receivership Entities' offices and interviewing various individuals, as well as securing three additional computers previously used by one or more Receivership Entities in Puerto Rico.  The Receiver also served 12 non-parties with a copy of the Order Appointing Receiver and issued 11 subpoenas.

14.     **Terminated Lease At Sarasota Office And Stored Contents For Liquidation**

- The Receiver determined to vacate and terminate the lease for the office used by Receivership Entity Kinetic Funds I, LLC in Sarasota, Florida to avoid incurring the monthly $6,000 rent.  The Receiver inventoried and transferred the office contents into storage units and is in the process of determining the appropriate disposition of those contents.

15.     **Continued Investor Outreach and Website Updates**

- The Receiver responded to phone calls and written communications from Kinetic Funds investors and also continued to provide updates and announcements on the informational website at www.kineticreceivership.com for investors and other interested parties.

The above activities are discussed in more detail in the Receiver's Second Interim Report which was filed on July 30, 2020 (Doc. 111) (the "Second Report"), as well as the Receiver's First Interim Report which was filed on April 30, 2020 (Doc. 60).  Each of those documents is also available on the Receiver's website at www.kineticreceivership.com.  The Receiver

incorporates the Second Report into this Application and attaches a true and correct copy of the Second Report as **Exhibit 2** for the Court's convenience.

## II.    <u>Background</u>

On February 20, 2020, the Commission filed a complaint (Doc. 1) (the "Complaint") in the United States District Court for the Middle District of Florida (the "Court") against the Defendants Kinetic Investment Group, LLC and Michael S. Williams and Relief Defendants Kinetic Funds I, LLC, KCL Services, LLC d/b/a Lendacy, Scipio, LLC, LF 42, LLC, El Morro Financial Group, LLC, and KIH Inc., f/k/a Kinetic International, LLC, alleging that the Defendants violated the Securities Act of 1933, the Securities Exchange Act of 1934, and the Investment Advisers Act of 1940 by making false or materially misleading representations to investors and that over $6 million of investor funds was misappropriated to fund other business ventures and pay for other unauthorized expenses. Doc. 1.[4]

According to the Complaint, the scheme involved securities offerings made on behalf of Relief Defendant Kinetic Funds, a purported hedge fund with a sub-fund structure managed by Defendants Kinetic Investment Group, LLC ("Kinetic Investment") and Williams. Defendants represented to investors that the largest sub-fund, Kinetic Funds Yield ("KFYield"), invested all of its assets in income-producing U.S. listed financial products hedged by listed options. *Id.* ¶ 2. Potential investors were told that KFYield was a liquid investment that would "maintain 90% principle [sic] protection" and that an investor could

---

[4] On April 27, 2020, Williams served his Answer and Affirmative Defenses largely denying the Commission's allegations (Doc. 56).

redeem their principal investment "100%...without penalties" with a 30-day written notice. *Id.* ¶¶ 2, 28.

Investors in the KFYield fund, which attracted the near-entirety of investor funds, were also often provided with documentation from Bloomberg's reporting service containing claims about KFYield's performance including that the fund had achieved positive annual returns every year since inception.  Many, but not all, KFYield investors were also attracted to the investment opportunity given the advertised ability to simultaneously obtain a low-interest loan at the time of their investment from Relief Defendant KCL Services d/b/a Lendacy ("Lendacy") based on the amount of their KFYield investment.  Investors understood that Lendacy was separate from Kinetic Funds and utilized its own private funding source to make the low-interest loans.

On March 6, 2020, the Court granted the Commission's Motion for Appointment of Receiver and entered an Order appointing Mark A. Kornfeld as the Receiver over Defendant Kinetic Investment Group, LLC and the Relief Defendants ("Order Appointing Receiver") (Doc. 34).  The Receiver's preliminary investigation has uncovered evidence supporting the Commission's  allegations that Defendants made a number of misrepresentations relating to the promised and actual use of investor funds and the performance of the Kinetic Funds portfolios.  The Receiver's preliminary forensic accounting also shows that at least $6 million of investor funds that were earmarked for investment in the KFYield portfolio were either misappropriated or otherwise diverted to other projects and expenses unrelated to the Kinetic Funds investment opportunity.

A mediation is currently scheduled for August 28, 2020.

### III.   <u>Professional Services</u>

Pursuant to the Order Appointing Receiver, the Receiver obtained approval to engage various Retained Personnel to assist him in carrying out his duties and responsibilities in the Order Appointing Receiver.  The Order Appointing Receiver further set forth the frequency and procedures pursuant to which the Receiver was to seek compensation and expense reimbursement for the Receiver and his Retained Professionals.   Doc. 34 ¶¶ 53-54.   In accordance with the Commission's Billing Instructions, the Receiver states as follows:

**(a) Time period covered by the Application:** April 1, 2020 – June 30, 2020.

**(b) Date of Receiver's appointment:** March 6, 2020.

**(c) Date services commenced:** February 14, 2020[5].

**(d) Names and rates of all professionals:** See Exs. 5-6.

**(e) Interim or Final Application:** Interim.

**(f) Records supporting fee application:** See below.

The following exhibits are provided in accordance with the Billing Instructions:

<u>Exhibit 3</u>:     Receiver's Certification

<u>Exhibit 4</u>:     Total compensation and expenses requested; any amounts previously requested; and total compensation and expenses previously awarded

<u>Exhibit 5</u>:     Fee Schedule: Names and Hourly Rates of Professionals and Paraprofessionals & Total Amount Billed for each Professional and Paraprofessional:

---

[5] As further described in the Receiver's First Omnibus Fee Application, the Receiver and his professionals began undertaking efforts in the weeks prior to his appointment to prepare for the possibility of the Order Appointing Receiver being entered at or following the hearing on March 6, 2020, but neither the Receiver not his Professionals sought reimbursement of those fees or expenses.

Exhibit 5(a): Quarles & Brady LLP

Exhibit 5(b): Peters, LaPlaca, and Fusté

Exhibit 5(c): Yip & Associates

Exhibit 5(d): E-Hounds

Exhibit 5(e): PDR CPAs + Advisors

Exhibit 5(f): International Intelligence Group, LLC

Exhibit 6:    The Professionals' time records for the time period covered by this Application, sorted in chronological order, including a summary and breakdown of the requested reimbursement of expenses:

Exhibit 6(a): Quarles & Brady LLP

Exhibit 6(b): Peters, LaPlaca, and Fusté

Exhibit 6(c): Yip & Associates

Exhibit 6(d): E-Hounds

Exhibit 6(e): PDR CPAs + Advisors

Exhibit 6(f): International Intelligence Group, LLC

## IV.   **Case Status**

### (a)   **Cash on hand**

As of the date of filing this Application, the Receivership bank accounts have a balance of $8,169,479.25.[6] The Receiver has also taken possession of various accounts at Interactive Brokers held by Kinetic Funds, including two accounts which appear to have been managed

---

[6] Approximately $205,000 remains in various bank accounts at BMO Harris that have been frozen pursuant to the Order Appointing Receiver but which have not been transferred to the Receivership bank accounts given continuing investigation into whether those accounts contain Receivership Property.

separately from Kinetic Funds and primarily consist of a large position in Johnson & Johnson securities (the "Other Accounts").  At the instruction of two investors that claim ownership of the Other Accounts, the Receiver has not taken any action as to those accounts.[7]  Not including the Other Accounts, the Receiver liquidated the remaining equity positions and there remains approximately $13,219,546.49 in liquidated cash proceeds in those accounts.  There is also a separate stand-alone account with a margin balance of -$7,698,187.16 (the "Margin Account").  The Receiver continues to investigate the origin and ownership of the Other Accounts as well as the Margin Account, including whether or not Kinetic Funds is obligated to repay some or all of that balance.[8]

(b)      **Summary of the administration of the case**

Since his appointment on March 6, 2020, the Receiver has administered the case with the objective of efficiently fulfilling his duties under the Order Appointing Receiver while doing so as cost-effectively as possible by, wherever possible, leveraging the use of professionals with favorable rate structures.  As of the date of this Application, the Receiver currently has secured approximately $8,169,479.25 in funds at ServisFirst Bank and

---

[7]  The Other Accounts have a total net balance of $5,748,507.87 as of June 30, 2020, which includes total securities positions of approximately $10.1 million and a corresponding margin balance of approximately -$4.422 million.  It has been represented to the Receiver that those accounts were purportedly independently managed by Williams on behalf of two Kinetic Funds investors and thus not related to the Kinetic Funds accounts.  The Receiver continues to investigate the relationship between the Other Accounts and the Kinetic Funds brokerage accounts and has been in extensive discussions with those investors and his legal and forensic accounting professionals to better understand these relationships before taking any further action as to the Margin Account.

[8] As discussed in further detail in Section V.E of the Second First Interim Report attached as **Exhibit 2**, the Receiver believes that other investors - not Kinetic Funds - are responsive for at least a portion of the Margin Balance and that the remainder is subject to set off by the Kinetic Funds brokerage accounts.

$13,219,546.49 at Interactive Brokers not including the Other Accounts or the Margin Account.  These amounts are potentially subject to set-off by the Margin Account.

During this reporting period, the Receiver has focused on continuing his investigation of the underlying business operations of the various Receivership Entities, enhancing and preserving the value of Receivership assets, investigating potential avenues to recover additional assets, and formulating a framework for an efficient and equitable claims process to begin returning funds to victims.  These efforts have included the liquidation of various gold holdings, the successful filing of a motion for turnover of the Puerto Rico luxury apartment purchased by Defendant Williams with investor funds, and analyzing the potential listing of the historic commercial building in Puerto Rico that was also purchased by Defendant Williams with investor funds.  The Receiver anticipates seeking Court approval for the proposed claims process in the near future.  Although the Receiver has made significant progress, Defendant Williams continues to contest the Commission's allegations and thus the Receiver is unable to offer an estimate as to when the case is expected to close.

    **(c)**    **Summary of creditor claims proceedings**

The Receiver has begun to analyze the relationship between the Receivership Entities and current and former investors in order to determine the most equitable framework for a claims process to return investor funds that can be submitted for the Court's approval.  This analysis has been complicated by the fact that many of the current and former investors in Kinetic Funds also obtained a loan (or loans) from Receivership Entity Lendacy, which required the Receiver and his forensic professionals to conduct a full forensic analysis of the flow of funds between investors and all Receivership Entities over a seven-year period based

on available financial records.  With the assistance of his Retained Professionals, the Receiver has made significant progress in these efforts and in the near future anticipates seeking court approval for a comprehensive claims process to address and verify the various investor claims. At this stage, the Receiver does not believe that sufficient funds exist to satisfy all anticipated investor claims in full.

      **(d)**    **Description of assets**

In additional to the descriptions provided herein, for detailed information about the assets of the receivership estate, including the anticipated or proposed disposition of the assets, the Receiver respectfully refers the Court and interested parties to the Second Report attached hereto as **Exhibit 2**.

      **(e)**    **Description of liquidated and unliquidated claims held by the Receiver**

The Receiver continues to review potential causes of action against the principals of the Receivership Defendants and various third parties, which claims remain subject to the Receiver's ongoing investigation with the assistance of his legal and forensic professionals. These claims may include common law claims and claims under fraudulent transfer statutes. While the Receiver cannot yet predict the likelihood, amount or cost-effectiveness of particular claims or the claims as a whole, the Receiver continues to diligently evaluate claims against third parties.

**IV.**    **Services Provided And Compensation Sought By The Professionals**

      **(a)**    **Services Provided By The Receiver And Quarles & Brady LLP**

The Receiver is a partner at the law firm of Quarles & Brady LLP ("Quarles & Brady") and co-chair of Quarles & Brady's Securities Litigation Practice Group.  The Receiver has

practiced law for nearly thirty years and has experience handling fraud recovery cases. The Receiver obtained Court approval to retain the services of Quarles & Brady to serve as his legal counsel. Quarles & Brady is a national full-service law firm with extensive experience in receiverships, commercial litigation, financial services, and regulatory matters. As an accommodation to the Receiver and the public interest nature of this matter, Quarles & Brady agreed to reduce the billing rate of its professionals for this case as provided in the Fee Schedule attached hereto as **Exhibit 5** which was, on average, more than 20% (and in some instances, closer to 30%) less than the customary rate charged to clients. To date, these discounts resulted in a total reduction of over $100,000 from the rates customarily charged by Quarles & Brady attorneys to clients.[9]

The standard hourly rate which the Receiver charges clients begins at (and often exceeds) $625. However, the Receiver agreed that for purposes of his appointment as the Receiver, his hourly rate would be reduced to $437.50 per hour, representing approximately a thirty percent (30%) discount off the standard hourly rate which he charges clients in comparable matters. This rate was set forth in the Commission's Motion to Appoint Receiver, which the Court granted on March 6, 2020 (Doc. 34). During the time covered by this motion, the Receiver seeks compensation for 187 hours expended on this Receivership. A copy of the statement summarizing the services rendered by the Receiver is attached hereto as **Exhibit**

---

[9] The Receiver and Quarles & Brady also invested numerous hours in the weeks leading up to the March 6, 2020 hearing in order to be prepared if the Court granted the Commission's Motion for Appointment of Receiver. The Receiver and Quarles & Brady incurred these hours as a matter of public interest and are not seeking reimbursement for these pre-receivership fees.

QB\63825679.2

**6(a)**.  The Receiver requests the Court award him fees for the professional services rendered from April 1, 2020 through June 30, 2020, in the amount of $81,812.50.

During the period covered by this Application, Quarles & Brady billed 473.3 hours in assisting the Receiver in fulfilling his duties under the Order Appointing Receiver but only seeks compensation for 429.10 of those hours.  The statement summarizing the services rendered by Quarles & Brady is also encompassed within **Exhibit 6(a)** attached hereto.  The work performed by Quarles & Brady has been focused on investigating the fraud and related activities underlying this matter; locating and taking control of Receivership assets; and investigating and pursuing additional assets for the Receivership as detailed in the Interim Report.  The Receiver requests that the Court award Quarles & Brady fees for professional services rendered and costs incurred from April 1, 2020, through June 30, 2020, in the amounts of $114,327.50 and $6,307.49, respectively.

The Receiver and his legal professionals with Quarles & Brady provided these services to investigate the affairs of the Receivership Entities, preserve Receivership assets, and attempt to locate and recover additional assets. These services were incurred in connection with the administration of the Receivership and are for the benefit of aggrieved investors, creditors, and other interested parties of the Receivership Entities. All of the services for which compensation is sought were rendered on behalf of the Receivership Entities and in furtherance of the duties of the Receiver, and in discharge of the Receiver's responsibilities under the Order Appointing Receiver.

(b)     **Services Provided By Yip & Associates**

The Receiver obtained Court approval to retain the services of Yip Associates, experienced forensic accountants, to assist in investigating and analyzing the flow of funds both into and out of the various businesses operated by the Receivership Entities, and to assist in locating any additional funds. Yip & Associates has significant experience conducting forensic and fraud investigations in actions brought by state and federal regulators including the Securities and Exchange Commission.  As set forth in the Receiver's Motion to Retain Yip & Associates, Yip & Associates agreed to reduce the rates of its professionals for this case.  Hal Levenberg, a Director at Yip & Associates whose normal hourly rate charged to clients is $395, agreed to cap his rate at $295 which is the same rate charged by the Receiver's lead counsel, Jordan D. Maglich.  Yip & Associates also agreed to discount the hourly rates charged by associates and senior associates from $195 to $245 to $175 and $220, respectively.

The Receiver has relied on Yip & Associates' extensive forensic accounting experience to assist him in understanding the complex relationship between the various Receivership Entities as well as account for the numerous inflows and outflows over the past seven-year period for which the Receiver has obtained voluminous banking and brokerage statements.  These services were instrumental to helping the Receiver understand and account for the flow of funds between the various entities and also saved the Receiver considerable time in preparing various documents and pleadings incorporating this forensic analysis including the Interim Report.

The Receiver has also prioritized the process of gathering the necessary information to analyze and determine the appropriate method and process for distributing funds back to

QB\63825679.2

investors and interested parties with approved claims, which has involved Yip & Associates' significant assistance in preparing a preliminary forensic analysis for each investor tracing the deposit and withdrawal of funds both from any Kinetic Funds sub-fund(s) and, in many circumstances, Lendacy.  These efforts seek to preserve Receivership assets by ensuring that any approved claim factors in each investor's investment and recoupment of any funds.  This has enabled the Receiver to begin working on a claims motion which he hopes to present for Court approval in the coming weeks

During the period covered by this Application, Yip & Associates billed 436.4 hours in assisting the Receiver in fulfilling his duties under the Order Appointing Receiver, but only seeks compensation for 348.10 of those hours consisting of fees in the sum of $91,512.50 and reimbursement of expenses in the sum of $64.80, for a total of $91,577.30.[10]  A copy of the statement summarizing the services rendered by Yip & Associates is attached hereto as **Exhibit 6(c)**.  The Receiver requests that the Court award Yip & Associates fees for professional services rendered and costs incurred from April 1, 2020, through June 30, 2020, in the amounts of $91,512.50 and $64.80, respectively.

(c)      **Services Provided By E-Hounds, Inc.**

The Receiver obtained Court approval to retain the services of E-Hounds, Inc. ("E-Hounds") to assist with managing and facilitating access to data imaged from electronic devices and hardware belonging to the Receivership Entities.  As set forth in the Receiver's Motion to Retain Information Technology Professionals ) (the "IT Motion") (Doc. 38), E-

---

[10]  As seen in Yip & Associates' invoice attached as Exhibit 6(c), the vast majority of Yip & Associates' forensic accounting and investor analysis services were completed in April 2020 and the ensuing monthly invoices in May 2020 and June 2020 were significantly smaller.

Hounds principal Adam Sharp has extensive experience in this field and also with assisting court-appointed receivers including in matters brought by the SEC.  As an accommodation to the Receiver, E-Hounds agreed not to charge an up-front retainer and provided preferred hourly rates ranging from $195 to $250 for customary forensic imaging tasks.[11]  The Receiver has leveraged E-Hounds' lower rate structure to identify and preserve electronic data obtained from Receivership Entities' computer servers, electronic devices and paper files located at the Sarasota office and utilize the firm's review platform as a central review platform with no additional servicing or storage fees.  The Court granted the Receiver's Motion to retain E-Hounds on March 6, 2020 (Doc. 42).

The extent of services provided by E-Hounds to the Receiver during this application period has primarily consisted of updating and providing the document review platform and, where necessary, performing one-off forensic imaging tasks.  The Receiver anticipates that this will remain the primary services provided by E-Hounds for the foreseeable future.  During the period covered by this Application, E-Hounds billed 21 hours and seeks payment of fees in the sum of $4,485.00 and reimbursement of expenses in the sum of $2,625.00, for a total of $7,110.00.  A copy of the statement summarizing the services rendered by E-Hounds is attached hereto as **Exhibit 6(d)**.  The Receiver requests that the Court award E-Hounds fees for professional services rendered and costs incurred from April 1, 2020, through June 30, 2020, in the amounts of $4,485.00 and $2,625.00, respectively.

---

[11] E-Hounds' fee proposal, which was included in the Receiver's IT Motion, also included additional fees and services for non-customary tasks including expert witness and "triage reporting" services.  Doc. 38 Ex. 2.

**(d)    Services Provided By Peters, LaPlaca, and Fusté**

Given the presence of Receivership Entities' offices and potential assets in San Juan, Puerto Rico, the Receiver obtained Court approval to retain Peters, LaPlaca, and Fusté (the "Fusté Firm"), which is based in San Juan, Puerto Rico.  The Receiver anticipates primarily utilizing the Fusté Firm (and/or the International Intelligence Group) to assist with any on-the-ground tasks connected with the Receivership Entities' nexus to Puerto Rico.  During the period covered by this Application, the Fusté Firm billed 1.2 hours and seeks payment of fees in the sum of $360.  A copy of the statement summarizing the services rendered by the Fusté Firm is attached hereto as **Exhibit 6(b)**.  The Receiver requests that the Court award the Fusté Firm fees for professional services rendered and costs incurred from April 1, 2020, through June 30, 2020, in the amount of $360.00.

**(e)    Services Provided By International Intelligence Group, LLC**

Given the presence of Receivership Entities' offices and potential assets in San Juan, Puerto Rico, the Receiver obtained Court approval to retain International Intelligence Group, LLC (the "IIG Firm") to assist the Receiver with executing his duties as it applies to any offices or assets located in Puerto Rico.  IIG's principal, Hector Gonzales, is a retired supervisory Special Agent with the FBI with over twenty years of experience most recently in San Juan, Puerto Rico.   Mr. Gonzales primarily assisted the Receiver during this Application period in locating and securing Receivership assets in San Juan, Puerto Rico immediately following entry of the Order Appointing Receiver as well as handling any day-to-day matters which were not economically feasible to be carried out by the Receiver's Florida-based professionals.  During the period covered by this Application, the IIG Firm

billed 7.8 hours and seeks payment of fees in the sum of $664.39 and reimbursement of expenses in the sum of $136.16, for a total of $800.55.  A copy of the statement summarizing the services rendered by the IIG Firm is attached hereto as **Exhibit 6(f)**.  The Receiver requests that the Court award the IIG Firm fees for professional services rendered and costs incurred from April 1, 2020, through June 30, 2020, in the amounts of $664.39 and $136.16, respectively.

   **(f)**  **Services Provided By PDR CPAs + Advisors.**

   The Receiver obtained Court approval to retain the services of PDR CPAs + Advisors ("PDR") to handle tax-related issues for the Receivership Entities.  Doc. 47.  This includes the preparation of any required tax-related documents as well as analyzing previous tax documents to assist the Receiver in performing his duties.  PDR's principal, Bill Price, routinely provides tax and accounting services in receivership matters.  During the period covered by this Application, PDR billed the Receiver $3,077.50 as set forth in the invoices attached as **Exhibit 6(e)**.  A copy of the statement summarizing the services rendered by PDR is attached hereto as **Exhibit 6(f)**.  The Receiver requests that the Court award PDR fees for professional services rendered and costs incurred from April 1, 2020, through June 30, 2020, in the amounts of $3,077.50 and $380.25, respectively.

## <u>MEMORANDUM OF LAW</u>

   A receiver appointed by a court who reasonably and diligently discharges his duties is entitled to be fairly compensated for services rendered and expenses incurred.  *See SEC v. Elliott*, 953 F.2d 1560 (11th Cir. 1992) ("[I]f a receiver reasonably and diligently discharges his duties, he is entitled to compensation."); *Donovan v. Robbins*, 588 F. Supp. 1268, 1272

(N.D. Ill. 1984) ("[T]he receiver diligently and successfully discharged the responsibilities placed upon him by the Court and is entitled to reasonable compensation for his efforts."); *SEC v. Custable*, 1995 WL 117935 (N.D. Ill. Mar. 15, 1995) (receiver is entitled to fees where work was of high quality and fees were reasonable); *SEC v. Mobley*, 2000 WL 1702024 (S.D.N.Y. Nov. 13, 2000) (court awarded reasonable fees for the receiver and his professionals). In determining reasonable compensation for the services rendered by the Receiver and his Professionals, the Court should consider the circumstances surrounding the receivership. *See Elliot*, 953 F.2d at 1577.

In addition to fees, the receiver is "also entitled to be reimbursed for the actual and necessary expenses" that the receiver "incurred in the performance of [its] duties." *Fed. Trade Comm'n v. Direct Benefits Grp., LLC*, 2013 WL 6408379, at *3 (M.D. Fla. 2013). The Receiver and his Professionals support their claims for reimbursement of expenses with "sufficient information for the Court to determine that the expenses are actual and necessary costs of preserving the estate." *SEC v. Kirkland*, 2007 WL 470417, at *2 (M.D. Fla. 2007) (citing *In re Se. Banking Corp.*, 314 B.R. 250, 271 (Bankr. S.D. Fla. 2004)).

Here, because of the nature of this case, it was necessary for the Receiver to employ attorneys, accountants, and professionals experienced and familiar with financial frauds, federal receiverships, securities laws, banking, finance, and trusts and estates. Further, in order to perform the services required and achieve the results obtained to date, the skills and experience of the Receiver and the Professionals in the areas of fraud, securities, computer and accounting forensics, and financial transactions were indispensable.

The Receiver and his legal, forensic, and information technology professionals have each discounted their normal and customary rates as an accommodation to the Receivership and to conserve Receivership assets. The rates charged by the attorneys and paralegals are at or below those charged by attorneys and paralegals of comparable skill from other law firms in the Middle District of Florida. This case has been time-intensive for the Receiver and his Professionals because of the need to resolve many issues rapidly and efficiently. The attached Exhibits detail the time, nature and extent of the professional services rendered by the Receiver and his Professionals for the benefit of investors, creditors, and other interested parties. The Receiver anticipates that additional funds will be obtained through the Receiver's negotiations or litigation with third parties.

The Receiver is sensitive to the need to conserve the Receivership Entities' assets and respectfully submits that the fees and costs expended to date were reasonable, necessary, and benefited the Receivership. Notably, the Commission has no objection to the relief sought in this motion. *Custable*, 1995 WL 117935, *7 ("In securities law receiverships, the position of the SEC in regard to the awarding of fees will be given great weight.").

## <u>CONCLUSION</u>

Under the terms and conditions of the Order Appointing Receiver, the Receiver, among other things, is authorized, empowered, and directed to engage professionals to assist him in carrying out his duties and obligations. The Order further provides that he apply to the Court for authority to pay himself and his Professionals for services rendered and costs incurred. In exercising his duties, the Receiver has determined that the services rendered and

their attendant fees and costs were reasonable, necessary, advisable, and in the best interest of the Receivership.

**WHEREFORE,** Mark A. Kornfeld, the Court-appointed Receiver, respectfully requests that this Court award the following sums and direct that payment be made from the Receivership assets:

| | |
|---|---|
| Mark A. Kornfeld and Quarles & Brady | $ 202,447.49 |
| Yip & Associates | $  91,557.30 |
| E-Hounds | $   7,110.00 |
| Peters, LaPlaca, and Fuste | $      360.00 |
| International Intelligence Group, LLC | $      800.55 |
| PDR CPAs + Advisors | $    3,457.75 |

A proposed Order is attached as **Exhibit 7**.

**WHEREFORE**, the Receiver seeks entry of an Order granting this motion and awarding the Receiver and his professionals their interim fees, reimbursement of costs, and for such other relief that is just and proper.

## <u>LOCAL RULE 3.01(g) CERTIFICATION</u>

Pursuant to Local Rule 3.01(g), the Receiver hereby certifies that he has conferred with counsel for Plaintiff, Securities and Exchange Commission. The Commission has indicated it does not oppose the requested relief.  The Receiver has also conferred with counsel for Defendant Michael S. Williams, who has indicated he takes no position on the requested relief and will not be filing any opposition.  A hearing is requested only in the event that someone files an objection thereto.

QB\63825679.2

QUARLES & BRADY LLP

*/s/ Jordan D. Maglich*
Jordan D. Maglich
Florida Bar No. 0086106
Zachary S. Foster
Florida Bar No. 111980
101 E. Kennedy Blvd., Ste. 3400
Tampa, FL 33602
Telephone: (813) 387-0300
Facsimile: (813) 387-1800
jordan.maglich@quarles.com
zachary.foster@quarles.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 3rd day of August, 2020, I electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF system which will send a Notice

of Electronic Filing to the following counsel of record:

Christine Nestor, Esq.
Stephanie N. Moot, Esq.
John T. Houchin, Esq.
Barbara Veniegra, Esq.
Securities and Exchange Commission
801 Brickell Avenue, Suite 1950
Miami, FL 33131
nestorc@sec.gov
moots@sec.gov
houchinj@sec.gov
viniegrab@sec.gov
*Counsel for Plaintiff*

Timothy W. Schulz, Esq.
Timothy W. Schulz, P.A.
224 Datura Street, Suite 815
West Palm Beach, FL 33401
e-service@twslegal.com

Jon A. Jacobson, Esq.
Jacobson Law, P.A.
224 Datura Street, Suite 812
West Palm Beach, FL 33401
jjacobson@jlpa.com
e-service@jlpa.com
*Counsel for Defendant Michael Williams*

*/s/ Jordan D. Maglich*
Attorney

24