## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

**SECURITIES AND EXCHANGE COMMISSION,**

     Plaintiff,

v.

**KINETIC INVESTMENT GROUP, LLC and**
**MICHAEL SCOTT WILLIAMS,**          **CASE NO.:  8:20-cv-00394**

     Defendants, and

**KINETIC FUNDS I, LLC,**
**KCL SERVICES, LLC d/b/a LENDACY,**
**SCIPIO, LLC, LF42, LLC, EL MORRO**
**FINANCIAL GROUP, LLC, and**
**KIH, INC. f/k/a KINETIC INTERNATIONAL, LLC,**

     Relief Defendants.

_____ /

### RECEIVER'S FOURTH INTERIM OMNIBUS APPLICATION
### FOR ALLOWANCE AND PAYMENT OF PROFESSIONALS' FEES
### AND REIMBURSEMENT OF EXPENSES FOR
### OCTOBER 1, 2020 – DECEMBER 31, 2020[1]

     Mark A. Kornfeld, Esq., in his capacity as the court-appointed Receiver (the

"Receiver") for Defendant Kinetic Investment Group, LLC and Relief Defendants

Kinetic Funds I, LLC, KCL Services, LLC d/b/a Lendacy, Scipio, LLC, LF 42,

LLC, El Morro Financial Group, LLC, and KIH Inc., f/k/a Kinetic International,

LLC (collectively, the "Receivership Defendants"), moves this Court for the entry of

an order awarding fees and reimbursement of costs to the Receiver and his

---

[1] *See* Order Appointing Receiver (Doc. 34) at ¶ 54.

professionals whose retention has been approved by the Court. *See* Docs. 41-43, 47, 154. This motion covers all fees and costs incurred from October 1, 2020, through December 31, 2020 (the "Application Period"). The Securities and Exchange Commission's (the "SEC" or "Commission") Standardized Fund Accounting Report ("SFAR") for this period is attached hereto as **Exhibit 1**. The Commission does not oppose this Motion, and Defendant Williams does not take a position on the Motion. In support thereof, the Receiver states as follows:

## I.   <u>Preliminary Statement</u>

The Receiver seeks Court approval to pay the sum of $82,600.25 to the professionals engaged by the Receiver for fees incurred and reimbursement of $6,537.98 in expenses for a total payment of $89,138.23.  This Application includes time billed for the three-month period from October 1, 2020 through December 31, 2020. The professionals who seek payment hereunder have made various accommodations given the public interest nature of this appointment, including providing a discount to their normally-charged rates, agreeing to seek payment of fees on a quarterly basis, and not seeking payment for any time incurred prior to the Receiver's appointment.

This is an extremely complex receivership involving the interrelated and simultaneous operation of multiple sub-funds in a hedge fund structure, a purportedly independent-yet- intertwined and financially-related lending platform, and the use of investor funds to purchase at least two parcels of real estate and fund the operation of at least three companies in Puerto Rico.  The Receiver has also faced challenges in

carrying out his duties given the current COVID-19 pandemic. Despite these challenges, the Receiver and his retained professionals have worked expeditiously and efficiently to provide valuable services and secure investor assets, have billed at significantly reduced rates, and are entitled to reasonable payment of the fees and reimbursement of their expenses.

For the time covered by this Motion,[2] the Receiver and his Retained Professionals have performed extensive and valuable services on behalf of the Receivership estate which include, but are not limited to, the following:

### 1.    Obtained Court Approval For And Executed A Major Settlement Providing Nearly $8 Million Benefit To Receivership Estate

- The Receiver and his Retained Professionals discovered the existence of significant margin obligations totaling over $12 million in the brokerage account maintained by Kinetic Funds at Interactive Brokers. Following a comprehensive investigation, the Receiver ultimately filed a Motion seeking the Court's approval for his determination that a significant portion of that balance was incurred for the benefit of two Kinetic Funds investors and that Kinetic Funds should not be financially or legally responsible for those amounts. The Receiver's ensuing negotiations with those investors culminated in a Court-approved settlement resulting in a net benefit of nearly $8 million to the Receivership Estate (Doc. 152). Following the Court's approval, the Receiver and his professionals carried out the terms of the settlement including the repayment of those margin obligations, the receipt of the two investors' settlement payment, and the transfer of all remaining net proceeds from Interactive Brokers to the Receiver's fiduciary accounts for safeguarding and eventual distribution to investors.

### 2.    Obtained Court Approval of Claims Process Framework And Distributed Proof Of Claim Packets To Over 100 Potential Claimants And Creditors

---

[2] Neither the Receiver nor his attorneys charged for the time spent preparing this motion.

- Following an investigation and analysis, and with assistance from his Retained Professionals, the Receiver previously filed (in Q3 2020) his Motion to Establish and Approve (i) Procedure to Administer and Determine Claims; (ii) Proof of Claim For; and (iii) Claims Bar Date and Notice Procedures (the "Claims Motion") which, in relevant part, sought Court approval for the procedures and framework for a claims process. After the Court entered an Order approving the Claims Motion on November 5, 2020, the Receiver and his professionals carried out that Order by, among other things, mailing out over 100 "proof of claim" informational and directional packets to potential claimants and creditors, as well as publishing formal notice of the claims process and claim bar date on the Receiver's website and as directed by the Court in the New York Times, the Sarasota Herald Tribune, and El Nuevo Dia.

### 3.    Continued To Market And Sell Puerto Rico Properties

- The Receiver was able to trace investor funds to the purchase of two properties in Puerto Rico: a luxury apartment multiplex used as Defendant Williams' primary residence (the "Apartment") and a historic bank building known as the El Banco Espanol building (the "Bank Building"). Both properties are located in San Juan, Puerto Rico. The Receiver previously reached an agreement with Defendant Williams regarding the turnover of the apartment multiplex. The Receiver has obtained two appraisals of the Apartment and is working to obtain a final appraisal before listing the property for sale. The Receiver worked with a broker to list the Bank Building for sale, which resulted in numerous offers and the Receiver ultimately entering into an agreement to sell the building for $2.1 million (exclusive of costs, commissions, and other expenses). The Receiver has received an earnest money deposit pursuant to that agreement and intends to seek court approval of the sale of the Bank Building in the near future.

### 4.    The Third Interim Report

- The Receiver prepared and filed his Third Interim Report (Doc. 150) on October 30, 2020, which provided a comprehensive summary, analysis, and supporting documentation of the Receiver's continuing investigation as well as the tracing of investor funds.

### 5.    Litigation Claims

- The Receiver continued to analyze potential litigation claims against third parties that may have received funds from or otherwise provided services to or

for the benefit of any Receivership Entities.  To the extent the Receiver determines any such claims may be viable, he will consult with the Commission and ultimately seek the Court's guidance and approval.

### 6.   Continued Investigation And Review of Relevant Documentation and Information

- The Receiver and his professionals continued their investigation of the business operations of the various Receivership Entities. This included identifying, obtaining, and reviewing relevant documentation and information from the Receivership Entities' offices and interviewing various individuals, as well as securing three additional computers previously used by one or more Receivership Entities in Puerto Rico.

### 7.   Obtained Court Approval For Liquidation of Personal Property from Sarasota Office

- The Receiver filed his Unopposed Motion to Liquidate Personal Property on October 21, 2020, which was granted by the Court on November 5, 2020 (Doc. 153).  Pursuant to the Order, the Receiver is working to liquidate and dispose of personal property from Kinetic Funds' Sarasota, Florida office with an individual value of $5,000 or less.

### 8.   Continued Investor Outreach and Website Updates

- The Receiver responded to phone calls and written communications from Kinetic Funds investors and continued to provide updates and announcements on the informational website at www.kineticreceivership.com for investors and other interested parties.

The above activities are discussed in more detail in the Receiver's Fourth Interim Report which was filed on February 1, 2021 (Doc.175) (the "Fourth Report"), as well as the Receiver's First Interim Report which was filed on April 30, 2020 (Doc. 60), Second Interim Report which was filed on July 30, 2020 (Doc. 111), and Third Interim Report which was filed on October 30, 2020 (Doc. 150). Each of those documents is also available on the Receiver's website at

www.kineticreceivership.com. The Receiver incorporates the Fourth Report into this Application and attaches a true and correct copy of the Fourth Report as **Exhibit 2** for the Court's convenience.

## II. <u>Background</u>

On February 20, 2020, the Commission filed a complaint (Doc. 1) (the "Complaint") in the United States District Court for the Middle District of Florida (the "Court") against the Defendants Kinetic Investment Group, LLC and Michael S. Williams and Relief Defendants Kinetic Funds I, LLC, KCL Services, LLC d/b/a Lendacy, Scipio, LLC, LF 42, LLC, El Morro Financial Group, LLC, and KIH Inc., f/k/a Kinetic International, LLC, alleging that the Defendants violated the Securities Act of 1933, the Securities Exchange Act of 1934, and the Investment Advisers Act of 1940 by making false or materially misleading representations to investors and that over $6 million of investor funds was misappropriated to fund other business ventures and pay for other unauthorized expenses. Doc. 1.[3]

According to the Complaint, the scheme involved securities offerings made on behalf of Relief Defendant Kinetic Funds, a purported hedge fund with a sub-fund structure managed by Defendants Kinetic Investment Group, LLC ("Kinetic Investment") and Williams. Defendants represented to investors that the largest sub-fund, Kinetic Funds Yield ("KFYield"), invested all of its assets in income-producing

---

[3] On April 27, 2020, Williams served his Answer and Affirmative Defenses largely denying the Commission's allegations (Doc. 56).

U.S. listed financial products hedged by listed options. *Id.* ¶ 2. Potential investors were told that KFYield was a liquid investment that would "maintain 90% principle [sic] protection" and that an investor could redeem their principal investment "100%...without penalties" with a 30-day written notice. *Id.* ¶¶ 2, 28.

Investors in the KFYield fund, which attracted the near-entirety of investor funds, were also often provided with documentation from Bloomberg's reporting service containing claims about KFYield's performance including that the fund had achieved positive annual returns every year since inception. Many, but not all, KFYield investors were also attracted to the investment opportunity given the advertised ability to simultaneously obtain a low- interest loan at the time of their investment from Relief Defendant KCL Services d/b/a Lendacy ("Lendacy") based on the amount of their KFYield investment. Investors understood that Lendacy utilized its own private funding source to make the low-interest loans.

On March 6, 2020, the Court granted the Commission's Motion for Appointment of Receiver and entered an Order appointing Mark A. Kornfeld as the Receiver over Defendant Kinetic Investment Group, LLC and the Relief Defendants ("Order Appointing Receiver") (Doc. 34). The Receiver's preliminary investigation has uncovered evidence supporting the Commission's allegations that Defendants made a number of misrepresentations relating to the promised and actual use of investor funds and the performance of the Kinetic Funds portfolios. The Receiver's preliminary forensic accounting also shows that at least $6 million of investor funds that were earmarked for investment in the KFYield portfolio were either

misappropriated or otherwise diverted to other projects and expenses unrelated to the Kinetic Funds investment opportunity.

A mediation was held on August 28, 2020, but resulted in an impasse (Doc. 132).

## III. <u>Professional Services</u>

Pursuant to the Order Appointing Receiver, the Receiver obtained approval to engage various Retained Personnel to assist him in carrying out his duties and responsibilities in the Order Appointing Receiver. The Order Appointing Receiver further set forth the frequency and procedures pursuant to which the Receiver was to seek compensation and expense reimbursement for the Receiver and his Retained Professionals. Doc. 34 ¶¶ 53-54. In accordance with the Commission's Billing Instructions, the Receiver states as follows:

(a) **Time period covered by the Application:** October 1, 2020 – December 31, 2020.

(b) **Date of Receiver's appointment:** March 6, 2020.

(c) **Date services commenced:** February 14, 2020.[4]

(d) **Names and rates of all professionals:** See Exs. 5-6.

(e) **Interim or Final Application:** Interim.

(f) **Records supporting fee application:** See below.

---

[4] As further described in the Receiver's First Omnibus Fee Application, the Receiver and his professionals began undertaking efforts in the weeks prior to his appointment to prepare for the possibility of the Order Appointing Receiver being entered at or following the hearing on March 6, 2020, but neither the Receiver not his Professionals sought reimbursement of those fees or expenses.

The following exhibits are provided in accordance with the Billing Instructions:

Exhibit 3:    Receiver's Certification

Exhibit 4:    Total compensation and expenses requested; any amounts previously requested; and total compensation and expenses previously awarded

Exhibit 5:    Fee Schedule: Names and Hourly Rates of Professionals and Paraprofessionals & Total Amount Billed for each Professional and Paraprofessional:

Exhibit 5(a): Quarles & Brady LLP

Exhibit 5(b): Buchanan Ingersoll & Rooney PC[5]

Exhibit 5(c): Yip & Associates

Exhibit 5(d): E-Hounds

Exhibit 5(e): PDR CPAs + Advisors

Exhibit 5(f): IRW Law Offices

Exhibit 6:    The Professionals' time records for the time period covered by this Application, sorted in chronological order, including a summary and breakdown of the requested reimbursement of expenses:

Exhibit 6(a): Quarles & Brady LLP

Exhibit 6(b): Buchanan Ingersoll & Rooney PC

Exhibit 6(c): Yip & Associates

---

[5] Both the Receiver and his lead counsel moved to Buchanan Ingersoll & Rooney PC ("Buchanan Ingersoll") on December 14, 2020. The Receiver filed an unopposed motion seeking approval of his retention of Buchanan Ingersoll on December 8, 2020, which indicated that the previously-approved rates of the Receiver and his legal professionals would remain the same at Buchanan Ingersoll (Doc. 158). The Court entered an Order granting the motion on December 10, 2020 (Doc. 159).

Exhibit 6(d): E-Hounds

Exhibit 6(e): PDR CPAs + Advisors

Exhibit 6(f): IRW Law Offices

Exhibit 6(g): K.Tek Systems, Inc.

## IV.  **Case Status**

### (a)    **Cash on hand**

As of the date of filing this Application, the Receivership bank accounts have a cumulative balance of $16,578,497.25.[6] The Receiver also took possession of various sub-accounts at Interactive Brokers held by Kinetic Funds (the "KF Brokerage Account"), including several sub-accounts which appear to have been managed separately from Kinetic Funds (the "Other Accounts") and the existence of approximately $12 million in margin obligations.  The Receiver reached a settlement with the owners of the Other Accounts providing for a resolution of the roughly $12 million in margin obligations across the KF Brokerage Account as well as the transfer of the net proceeds to the Receiver's fiduciary accounts, and filed a motion on September 30, 2020, seeking the Court's approval of that settlement as well as the closing of the KF Brokerage Account (the "Settlement Motion") (Doc. 141).

---

[6] This balance includes approximately $413,000 in funds previously held in Mr. Williams' prior counsel's trust account and which were subsequently transferred to the Receiver's fiduciary accounts to be held in trust pending further Order from the Court. In the interim, the Court has authorized the payment of various living and legal expenses to or for Mr. Williams' benefit. This balance does not include an additional approximately $205,000 which remains in various bank accounts at BMO Harris that have been frozen pursuant to the Order Appointing Receiver but which have not been transferred to the Receivership bank accounts given continuing investigation into whether those funds comprise Receivership Property.

The Court entered an Order granting the Settlement Motion on November 5, 2020 (Doc. 152) which, in relevant part, authorized the Receiver to carry out the proposed settlement and liquidate the KF Brokerage Account.  The Receiver, with the assistance of his Retained Professionals, took necessary steps to comply with the Order resulting in the repayment of the remaining margin obligations and subsequently transferring net proceeds of approximately $5.5 million from the KF Brokerage Account to the Receiver's fiduciary accounts at ServisFirst Bank.  This transfer was in addition to the settlement payments totaling approximately $3.4 million paid by the Fogarty Family to the Receiver pursuant to the Settlement Motion.

**(b)    Summary of the administration of the case**

Since his appointment on March 6, 2020, the Receiver has administered the case with the objective of efficiently fulfilling his duties under the Order Appointing Receiver while doing so as cost-effectively as possible by, wherever available, leveraging the use of professionals with favorable rate structures.

During this reporting period, the Receiver has focused on continuing his investigation of the underlying business operations of the various Receivership Entities, enhancing and preserving the value of Receivership assets, investigating potential avenues to recover additional assets, and instituting a Court-approved framework to return funds to victims. These efforts have included obtaining approval of the proposed claims process framework and ultimately sending out over 100 proof of claim packets to potential claimants and creditors, marketing and reaching a

tentative agreement to sell the El Banco Espanol building in Puerto Rico, closing out Kinetic Funds' brokerage accounts and transferring the net proceeds to the Receiver's fiduciary accounts, and continuing to investigate the underlying business operations and additional potential avenues for asset recovery. Although the Receiver has made significant progress, Defendant Williams continues to contest the Commission's allegations and thus the Receiver is unable to offer an estimate as to when the case is expected to close.

**(c)     Summary of creditor claims proceedings**

The Receiver, along with his Retained Professionals, has analyzed the relationship between the Receivership Entities and current and former investors in order to determine the most equitable framework for a claims process to return investor funds that can be submitted for the Court's approval. Complicating this analysis was the fact that many of the current and former investors in Kinetic Funds also obtained a loan (or loans) from Receivership Entity Lendacy, which required the Receiver and his forensic professionals to conduct a full forensic analysis of the flow of funds between investors and all Receivership Entities over a seven-year period based on available financial records.

On August 19, 2020, the Receiver filed his Amended Motion to Establish and Approve (i) Procedure to Administer and Determine Claims; (ii) Proof of Claim Form; and (iii Claims Bar Date and Notice Procedures on August 20, 2020 (the "Claims Motion") (Doc. 131).  On November 5, 2020, the Court entered an Order granting the Claims Motion (Doc. 155).  In compliance with the Court's Order, the

Receiver mailed out over 100 proof of claim packets to potential claimants and creditors on November 17, 2020, published notification of the claim bar date of **February 15, 2021** in specified newspapers and his website, and filed his Notice of Publication and Claim Bar Date (Doc. 165).  After receiving and reviewing all Proof of Claim Forms that are timely submitted on or before the proposed claims bar date, the Receiver will then present his claim determinations for the Court's approval and seek authority to proceed with an initial distribution. At this stage, the Receiver does not believe that sufficient funds exist to satisfy all anticipated investor claims in full.

    **(d)**    **Description of assets**

In additional to the descriptions provided herein, for detailed information about the assets of the receivership estate, including the anticipated or proposed disposition of the assets, the Receiver respectfully refers the Court and interested parties to the Fourth Report attached hereto as **Exhibit 2**.

    **(e)**    **Description of liquidated and unliquidated claims held by the Receiver**

The Receiver continues to review potential causes of action against the principals of the Receivership Defendants and various third parties, which claims remain subject to the Receiver's ongoing investigation with the assistance of his legal and forensic professionals. These claims may include common law claims and claims under fraudulent transfer statutes. While the Receiver cannot yet predict the likelihood, amount or cost-effectiveness of particular claims or the claims as a whole, the Receiver continues to diligently evaluate claims against third parties.

## V.   Services Provided And Compensation Sought By The Professionals

### (a)   Services Provided By The Receiver And Quarles & Brady LLP/Buchanan Ingersoll & Rooney PC

The Receiver is a Shareholder at the law firm of Buchanan Ingersoll & Rooney PC ("Buchanan Ingersoll"). The Receiver has practiced law for nearly thirty years and has experience handling fraud recovery cases. The Receiver initially obtained Court approval to retain the services of Quarles & Brady, LLP ("Quarles & Brady") to serve as his legal counsel. As an accommodation to the Receiver and the public interest nature of this matter, Quarles & Brady agreed to reduce the billing rate of its professionals for this case as provided in the Fee Schedule attached hereto as **Exhibit 5** which was, on average, more than 20% (and in some instances, closer to 30%) less than the customary rate charged to clients. To date, these discounts resulted in a total reduction of over $100,000 from the rates customarily charged by Quarles & Brady attorneys to clients.  As of December 14, 2020, the Receiver and his lead counsel (Jordan D. Maglich) became associated with Buchanan Ingersoll.  The Court approved the retention of Buchanan Ingersoll on December 9, 2020 (Doc. 159), including Buchanan Ingersoll's agreement to continue the reduced billing rate of the Receiver and his professionals as existed.

The standard hourly rate which the Receiver charges clients begins at (and often exceeds) $625.  The Receiver agreed that for purposes of his appointment as the Receiver, his hourly rate would be reduced to $437.50 per hour, representing approximately a thirty percent (30%) discount off the standard hourly rate which he

charges clients in comparable matters. This rate was set forth in the Commission's Motion to Appoint Receiver, which the Court granted on March 6, 2020 (Doc. 34). During the time covered by this motion, the Receiver seeks compensation for 66.0 hours expended on this Receivership, consisting of 57.7 hours expended by the Receiver at Quarles & Brady and 8.3 hours expended by the Receiver at Buchanan Ingersoll. A copy of the statements summarizing the services rendered by the Receiver are attached hereto as **Exhibit 6(a)** and **6(b)**. The Receiver requests the Court award him fees for the professional services rendered from October 1, 2020 through December 31, 2020, in the amount of $28,875.00.

During the period covered by this Application, Quarles & Brady and Buchanan Ingersoll spent 136.0 hours in assisting the Receiver in fulfilling his duties under the Order Appointing Receiver but only seek compensation for 113.6 hours expended by legal professionals at Quarles & Brady and 7.6 hours expended by legal professionals at Buchanan Ingersoll.  The statements summarizing the services rendered by Quarles & Brady and Buchanan Ingersoll are also encompassed within **Exhibits 6(a)** and **6(b)** attached hereto. The work performed by Quarles & Brady, and subsequently Buchanan Ingersoll, has been focused on investigating the fraud and related activities underlying this matter; locating and taking control of Receivership assets; and investigating and pursuing additional assets for the Receivership as detailed in the Interim Report. For the period from October 1, 2020, through December 31, 2020, the Receiver requests that the Court award (i) Quarles & Brady fees for professional services rendered and costs incurred in the amounts of $29,158.50 and $3,912.98,

respectively, and (ii) Buchanan Ingersoll for professional services rendered in the amount of $2,242.00.

The Receiver and his legal professionals with Quarles & Brady (and subsequently Buchanan Ingersoll) provided these services to investigate the affairs of the Receivership Entities, preserve Receivership assets, and attempt to locate and recover additional assets. These services were incurred in connection with the administration of the Receivership and are for the benefit of aggrieved investors, creditors, and other interested parties of the Receivership Entities. All of the services for which compensation is sought were rendered on behalf of the Receivership Entities and in furtherance of the duties of the Receiver, and in discharge of the Receiver's responsibilities under the Order Appointing Receiver.

### (b)     Services Provided By Yip & Associates

The Receiver obtained Court approval to retain the services of Yip Associates, experienced forensic accountants, to assist in investigating and analyzing the flow of funds both into and out of the various businesses operated by the Receivership Entities, and to assist in locating any additional funds. Yip & Associates has significant experience conducting forensic and fraud investigations in actions brought by state and federal regulators including the Securities and Exchange Commission. As set forth in the Receiver's Motion to Retain Yip & Associates, Yip & Associates agreed to reduce the rates of its professionals for this case. Hal Levenberg, a Director at Yip & Associates whose normal hourly rate charged to clients is $395, agreed to cap his rate at $295 which is the same rate charged by the Receiver's lead counsel,

Jordan D. Maglich. Yip & Associates also agreed to discount the hourly rates charged by associates and senior associates from $195 to $245 to $175 and $220, respectively.

The Receiver has relied on Yip & Associates' extensive forensic accounting experience to assist him in understanding the complex relationship between the various Receivership Entities as well as account for the numerous inflows and outflows over the past seven-year period for which the Receiver has obtained voluminous banking and brokerage statements. These services were instrumental to helping the Receiver understand and account for the flow of funds between the various entities and also saved the Receiver considerable time in preparing various documents and pleadings incorporating this forensic analysis including the Interim Report. Yip & Associates also provided necessary services to allow the Receiver to analyze and determine the appropriate method and process for distributing funds back to investors and interested parties with approved claims, which ultimately resulted in the Receiver's mail-out of over 100 proof of claim packets to potential claimants and creditors.

During the period covered by this Application, Yip & Associates billed 68.5 hours in assisting the Receiver in fulfilling his duties under the Order Appointing Receiver, but only seeks compensation for 65.3 of those hours consisting of fees in the sum of $16,698.50.  A copy of the statement summarizing the services rendered by Yip & Associates is attached hereto as **Exhibit 6(c)**. The Receiver requests that the Court award Yip & Associates fees for professional services rendered from October 1, 2020, through December 31, 2020, in the amount of $16,698.50.

**(c)** **Services Provided By E-Hounds, Inc.**

The Receiver obtained Court approval to retain the services of E-Hounds, Inc. ("E- Hounds") to assist with managing and facilitating access to data imaged from electronic devices and hardware belonging to the Receivership Entities. As set forth in the Receiver's Motion to Retain Information Technology Professionals ) (the "IT Motion") (Doc. 38), E- Hounds principal Adam Sharp has extensive experience in this field and also with assisting court-appointed receivers including in matters brought by the SEC.  As an accommodation to the Receiver, E-Hounds agreed not to charge an up-front retainer and provided preferred hourly rates ranging from $195 to $250 for customary forensic imaging tasks.[7] The Receiver has leveraged E-Hounds' lower rate structure to identify and preserve electronic data obtained from Receivership Entities' computer servers, electronic devices and paper files located at the Sarasota office and utilize the firm's review platform as a central review platform with no additional servicing or storage fees. The Court granted the Receiver's Motion to retain E- Hounds on March 6, 2020 (Doc. 42).

The extent of services provided by E-Hounds to the Receiver during this application period has primarily consisted of updating and providing the document review platform and, where necessary, performing one-off forensic imaging tasks. The Receiver anticipates that this will remain the primary services provided by E-Hounds

---

[7] E-Hounds' fee proposal, which was included in the Receiver's IT Motion, also included additional fees and services for non-customary tasks including expert witness and "triage reporting" services. Doc. 38 Ex. 2.

for the foreseeable future. During the period covered by this Application, E-Hounds seeks reimbursement of expenses in the sum of $2,625.00. A copy of the statement summarizing the services rendered by E-Hounds is attached hereto as **Exhibit 6(d)**. The Receiver requests that the Court award E-Hounds fees for costs incurred from October 1, 2020, through December 31, 2020, in the amounts of $2,625.00.

**(d)** **Services Provided By PDR CPAs + Advisors.**

The Receiver obtained Court approval to retain the services of PDR CPAs + Advisors ("PDR") to handle tax-related issues for the Receivership Entities. (Doc. 47.) This includes the preparation of any required tax-related documents as well as analyzing previous tax documents to assist the Receiver in performing his duties. PDR's principal, Bill Price, routinely provides tax and accounting services in receivership matters. During the period covered by this Application, PDR billed the Receiver $2,340.00 as set forth in the invoices attached as **Exhibit 6(e)**. The Receiver requests that the Court award PDR fees for professional services rendered incurred from October 1, 2020, through December 31, 2020, in the amount of $2,340.00.

**(e)** **Services Provided By IRW Law Offices.**

In connection with his efforts to market and sell various Receivership real property located in Puerto Rico, the Receiver obtained Court approval to retain the services of IRW Law Offices ("IRW") to provide legal services to the Receiver regarding those efforts. (Doc. 154). This includes the preparation of necessary sale-related documents and other services to assist the Receiver in performing his duties.

During the period covered by this Application, the Receiver required IRW's assistance in connection with the marketing and sale of the El Banco Espanol building in San Juan, Puerto Rico. During this period, IRW seeks compensation for 14.9 hours expended on this matter and billed the Receiver $3,136.25 as set forth in the invoices attached as **Exhibit 6(f)**. The Receiver requests that the Court award IRW fees for professional services rendered incurred from October 1, 2020, through December 31, 2020, in the amount of $3,136.25.

 **(f)**  **Services Provided By K.Tek Systems.**

  The Receiver obtained Court approval to retain the services of K.Tek Systems, Inc. ("K.Tek") to prepare a website to be used to communicate with interested parties including investors. Doc. 47. The Court previously approved the payment of K.Tek's invoices generated during March 2020 that would represent the hosting of the website through February 2021. During December 2020, the Receiver utilized 1 hour of K.Tek's services to create and upload content to the website's Claims Process section. K.Tek seeks compensation for the $150 in fees it charged during this time period as set forth in the invoice attached as **Exhibit 6(g)**. The Receiver requests that the Court award K.Tek fees for professional services rendered incurred from October 1, 2020, through December 31, 2020, in the amount of $150.00.

## MEMORANDUM OF LAW

A receiver appointed by a court who reasonably and diligently discharges his duties is entitled to be fairly compensated for services rendered and expenses incurred. *See SEC v. Elliott*, 953 F.2d 1560 (11th Cir. 1992) ("[I]f a receiver reasonably and diligently discharges his duties, he is entitled to compensation."); *Donovan v. Robbins*, 588 F. Supp. 1268, 1272 (N.D. Ill. 1984) ("[T]he receiver diligently and successfully discharged the responsibilities placed upon him by the Court and is entitled to reasonable compensation for his efforts."); *SEC v. Custable*, 1995 WL 117935 (N.D. Ill. Mar. 15, 1995) (receiver is entitled to fees where work was of high quality and fees were reasonable); *SEC v. Mobley*, 2000 WL 1702024 (S.D.N.Y. Nov. 13, 2000) (court awarded reasonable fees for the receiver and his professionals). In determining reasonable compensation for the services rendered by the Receiver and his Professionals, the Court should consider the circumstances surrounding the receivership. *See Elliot*, 953 F.2d at 1577.

In addition to fees, the receiver is "also entitled to be reimbursed for the actual and necessary expenses" that the receiver "incurred in the performance of [its] duties." *Fed. Trade Comm'n v. Direct Benefits Grp., LLC*, 2013 WL 6408379, at *3 (M.D. Fla. 2013). The Receiver and his Professionals support their claims for reimbursement of expenses with "sufficient information for the Court to determine that the expenses are actual and necessary costs of preserving the estate." *SEC v. Kirkland*, 2007 WL 470417, at *2 (M.D. Fla. 2007) (citing *In re Se. Banking Corp.*, 314 B.R. 250, 271 (Bankr. S.D. Fla. 2004)).

Here, because of the nature of this case, it was necessary for the Receiver to employ attorneys, accountants, and professionals experienced and familiar with financial frauds, federal receiverships, securities laws, banking, finance, and trusts and estates. Further, in order to perform the services required and achieve the results obtained to date, the skills and experience of the Receiver and the Professionals in the areas of fraud, securities, computer and accounting forensics, and financial transactions were indispensable.

The Receiver and his legal, forensic, and information technology professionals have each discounted their normal and customary rates as an accommodation to the Receivership and to conserve Receivership assets. The rates charged by the attorneys and paralegals are at or below those charged by attorneys and paralegals of comparable skill from other law firms in the Middle District of Florida. This case has been time-intensive for the Receiver and his Professionals because of the need to resolve many issues rapidly and efficiently. The attached Exhibits detail the time, nature and extent of the professional services rendered by the Receiver and his Professionals for the benefit of investors, creditors, and other interested parties. The Receiver anticipates that additional funds will be obtained through the Receiver's negotiations or litigation with third parties.

The Receiver is sensitive to the need to conserve the Receivership Entities' assets and respectfully submits that the fees and costs expended to date were reasonable, necessary, and benefited the Receivership. Notably, the Commission has no objection to the relief sought in this motion. *Custable*, 1995 WL 117395, *7 ("In

securities law receiverships, the position of the SEC in regard to the awarding of fees will be given great weight.")

## <u>CONCLUSION</u>

Under the terms and conditions of the Order Appointing Receiver, the Receiver, among other things, is authorized, empowered, and directed to engage professionals to assist him in carrying out his duties and obligations. The Order further provides that he apply to the Court for authority to pay himself and his Professionals for services rendered and costs incurred. In exercising his duties, the Receiver has determined that the services rendered and their attendant fees and costs were reasonable, necessary, advisable, and in the best interest of the Receivership.

**WHEREFORE,** Mark A. Kornfeld, the Court-appointed Receiver, respectfully requests that this Court award the following sums and direct that payment be made from the Receivership assets:

| | |
|---|---|
| Mark A. Kornfeld, Esq. and Quarles & Brady | $58,315.23 |
| Mark A. Kornfeld, Esq. and Buchanan Ingersoll | $5,873.25 |
| Yip & Associates | $16,698.50 |
| E-Hounds | $2,625.00 |
| PDR CPAs + Advisors | $2,340.00 |
| IRW Law Offices | $3,136.25 |
| K. Tek Systems, Inc. | $150.00 |

A proposed Order is attached as **Exhibit 7**.

**WHEREFORE**, the Receiver seeks entry of an Order granting this motion and awarding the Receiver and his professionals their interim fees, reimbursement of costs, and for such other relief that is just and proper.

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), the Receiver hereby certifies that he has conferred with counsel for Plaintiff, Securities and Exchange Commission, which does not oppose the requested relief. The Receiver has also conferred with counsel for Defendant Michael S. Williams, who takes no position on the requested relief.

Respectfully submitted,

BUCHANAN INGERSOLL & ROONEY PC

By: *Jordan D. Maglich*
Jordan D. Maglich, Esq. (FBN 0086106)
401 E. Jackson St., Suite 2400
Tampa, FL  33602
Telephone: (813) 222-2098
Facsimile: (813) 222-8189
Email:  jordan.maglich@bipc.com
*Attorneys for Receiver Mark A. Kornfeld*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 15, 2021, I electronically filed the foregoing

with the Clerk of the Court by using the CM/ECF system which will send a Notice of

Electronic Filing to the following counsel of record:

Christine Nestor, Esq.
Stephanie N. Moot, Esq.
John T. Houchin, Esq.
Barbara Viniegra, Esq.
Securities and Exchange Commission
801 Brickell Avenue, Suite 1950
Miami, FL 33131
nestorc@sec.gov
moots@sec.gov
houchinj@sec.gov
viniegrab@sec.gov
*Counsel for Plaintiff*

Timothy W. Schulz, Esq.
Timothy W. Schulz, P.A.
224 Datura Street, Suite 815
West Palm Beach, FL 33401
e-service@twslegal.com

Jon A. Jacobson, Esq.
Jacobson Law, P.A.
224 Datura Street, Suite 812
West Palm Beach, FL 33401
jjacobson@jlpa.com
e-service@jlpa.com
*Counsel for Defendant Michael Williams*


By: */s/   Jordan D. Maglich*
                Attorney

4811-4235-6438, v. 1