## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

**SECURITIES AND EXCHANGE COMMISSION,**

     Plaintiff,

v.

**KINETIC INVESTMENT GROUP, LLC and**
**MICHAEL SCOTT WILLIAMS,**       **CASE NO.:  8:20-cv-394-MSS-SPF**

     Defendants, and

**KINETIC FUNDS I, LLC,**
**KCL SERVICES, LLC d/b/a LENDACY,**
**SCIPIO, LLC, LF42, LLC, EL MORRO**
**FINANCIAL GROUP, LLC, and**
**KIH, INC. f/k/a KINETIC INTERNATIONAL, LLC,**

     Relief Defendants.

_____ /

### RECEIVER'S FIFTH INTERIM OMNIBUS APPLICATION
### FOR ALLOWANCE AND PAYMENT OF PROFESSIONALS' FEES
### AND REIMBURSEMENT OF EXPENSES FOR
### JANUARY 1, 2021 – MARCH 31, 2021[1]

Mark A. Kornfeld, Esq., in his capacity as the court-appointed Receiver (the "Receiver") for Defendant Kinetic Investment Group, LLC and Relief Defendants Kinetic Funds I, LLC, KCL Services, LLC d/b/a Lendacy, Scipio, LLC, LF 42, LLC, El Morro Financial Group, LLC, and KIH Inc., f/k/a Kinetic International, LLC (collectively, the "Receivership Defendants"), moves this Court for the entry of an order awarding fees and reimbursement of costs to the Receiver and his

---

[1] *See* Order Appointing Receiver (Doc. 34) at ¶ 54.

professionals whose retention has been approved by the Court. *See* Docs. 41-43, 47, 154. This motion covers all fees and costs incurred from January 1, 2021, through March 31, 2021 (the "Application Period"). The Securities and Exchange Commission's (the "SEC" or "Commission") Standardized Fund Accounting Report ("SFAR") for this period is attached hereto as **Exhibit 1**. The Commission does not oppose this Motion, and Defendant Williams does not take a position on the Motion. In support thereof, the Receiver states as follows:

## I.   <u>Preliminary Statement</u>

The Receiver seeks Court approval to pay the sum of $189,073.50 to the professionals engaged by the Receiver for fees incurred and reimbursement of $3,194.24 in expenses for a total payment of $192,267.74.  This Application includes time billed for the three-month period from January 1, 2021 through March 31, 2021. The professionals who seek payment hereunder have made various accommodations given the public interest nature of this appointment, including providing a discount to their normally-charged rates, agreeing to seek payment of fees on a quarterly basis, and not seeking payment for any time incurred prior to the Receiver's appointment.

This is an extremely complex receivership involving the interrelated and simultaneous operation of multiple sub-funds in a hedge fund structure, a purportedly independent-yet- intertwined and financially-related lending platform, and the use of investor funds to purchase at least two parcels of real estate and fund the operation of at least three companies in Puerto Rico.  The Receiver has also faced challenges in carrying out his duties given the current COVID-19 pandemic. Despite these

challenges, the Receiver and his retained professionals have worked expeditiously and efficiently to provide valuable services and secure investor assets, have billed at significantly reduced rates, and are entitled to reasonable payment of the fees and reimbursement of their expenses.

For the time covered by this Motion,[2] the Receiver and his Retained Professionals have performed extensive and valuable services on behalf of the Receivership estate which include, but are not limited to, the following:

### 1. Administered Court-Approved Claims Process, Reviewed Claims Received Before Claims Bar Date, And Prepared For Seeking Court Approval Of Receiver's Claim Determinations

- Following the Court's approval of the Receiver's Motion to Establish and Approve (i) Procedure to Administer and Determine Claims; (ii) Proof of Claim For; and (iii) Claims Bar Date and Notice Procedures (the "Claims Motion"), the Receiver and his professionals carried out that Order by, among other things, mailing out over 100 "proof of claim" informational and directional packets to potential claimants and creditors, as well as publishing formal notice of the claims process and claim bar date on the Receiver's website and as directed by the Court in the New York Times, the Sarasota Herald Tribune, and El Nuevo Dia. The Receiver ultimately received 37 proof of claim packets from potential claimants, and he and his professionals intend to seek Court approval of his claim determinations as soon as possible.

### 2. Obtained Court Approval of Sale Of El Banco Espanol Building, Published Notice Of Sale And Overbidding Procedures, And Administered Marketing Process

- The Receiver worked with a broker to list the El Banco Espanol building located in San Juan, Puerto Rico, and ultimately received several offers before entering into an agreement to sell the building for $2.1 million (exclusive of costs, commissions, and other expenses). The Receiver filed his motion seeking Court approval of the sale on February 1, 2021, and the Court approved that motion on March 24, 2021 (Doc. 206). Pursuant to the Order and the applicable statutory procedures, the Receiver published a Court-

---

[2] Neither the Receiver nor his attorneys charged for the time spent preparing this motion.

approved Notice of Sale of the Bank Building in the *Sarasota Herald Tribune* and *El Nuevo Dia* on March 31, 2021 which, among other things, notified interested third parties of the ability to submit a *bona fide* offer pursuant to 28 U.S.C. § 2001. The Receiver ultimately received four *bona fide offers* within the statutory period at a substantial premium over the previous sale price approved by the Court. On May 11, 2021, the Receiver closed the sale of that building which resulted in net proceeds to the Receivership Estate of approximately $4 million (Doc. 236).

### 3. Obtained Court Approval Of Procedure To Pursue Potential Third-Party Claims

- The Receiver has identified various potential claims with respect to third-parties that may have received improper transfers consisting of investor assets. The Receiver filed his Unopposed Motion to Approve Procedure to Pursue Potential Third Party Claims on February 10, 2021, and the Court approved the motion on February 25, 2021 (Doc. 181). The Receiver and his professionals are in the process of evaluating those potential claims pursuant to the procedures approved by the Court.

### 4. Obtained Court Approval To Retain Professional For Review And Evaluation of ISX Asset

- The Receiver has obtained possession of what was represented to be the current code of the ISX software that was being developed by Receivership Defendant KIH, Inc. f/k/a Kinetic International, LLC. On March 18, 2021, the Receiver filed his Unopposed Motion for Authorization to Retain Marshall Swatt for Evaluation of ISX Asset, and the Court approved that motion on March 24, 2021 (Doc. 206). Following Mr. Swatt's analysis and evaluation, the Receiver will then consider whether any value may be realized for the software.

### 5. Obtained Appraisals And Prepared To Market And List Villa Gabriella Property For Sale

The Receiver and Defendant Williams previously entered into an agreement regarding the Villa Gabriella property in San Juan, Puerto Rico, following the Receiver's filing of his Motion for Turnover (Doc. 72). The Receiver has obtained the assistance of disinterested real estate professionals to provide professional evaluations of the property's estimated value, and is working with his real estate broker to list the property for sale in the near-future. When the property is listed for sale, the Receiver will also post details to the Receiver's website, www.kineticreceivership.com/assets-for-sale. In the event the

Receiver reaches an agreement with a prospective purchaser, he will then seek the Court's approval.

### 6.     The Fourth Interim Report

- The Receiver prepared and filed his Fourth Interim Report on January 29, 2021 (Doc. 175), which provided a comprehensive summary, analysis, and supporting documentation of the Receiver's continuing investigation as well as the tracing of investor funds.

### 7.     Continued Investigation And Review of Relevant Documentation and Information

- The Receiver and his professionals continued their investigation of the business operations of the various Receivership Entities. This included identifying, obtaining, and reviewing relevant documentation and information from the Receivership Entities' offices and interviewing various individuals.

### 8.     Listed For Sale And Disposed Of Personal Property from Sarasota Office

- The Receiver filed his Unopposed Motion to Liquidate Personal Property on October 21, 2020, which was granted by the Court on November 5, 2020 (Doc. 153). Pursuant to the Order, the Receiver listed the items for sale on his website and on Craigslist, and intends to dispose of all remaining personal property from the Sarasota Office on or before May 31, 2021, which may include donating items to local non-profits or charities.

### 9.     Attended To Litigation Matters

- The Receiver participated in Defendant Williams' deposition on February 10, 2021, and also responded to discovery requests propounded on him in the underlying litigation. In addition, the Receiver conferred with and ultimately took no position on a motion filed by non-party Silexx seeking the unfreezing of funds frozen in bank accounts at BMO Harris in the name of Silexx.

### 10.    Continued Investor Outreach and Website Updates

- The Receiver responded to phone calls and written communications from Kinetic Funds investors and continued to provide updates and announcements on the informational website at www.kineticreceivership.com for investors and other interested parties.

The above activities are discussed in more detail in the Receiver's Fifth Interim Report which was filed on April 30, 2021 (Doc. 229) (the "Fifth Report"), as well as the Receiver's First Interim Report which was filed on April 30, 2020 (Doc. 60), Second Interim Report which was filed on July 30, 2020 (Doc. 111), Third Interim Report which was filed on October 30, 2020 (Doc. 150) and Fourth Interim Report which was filed on February 1, 2021 (Doc.175). Each of those documents is also available on the Receiver's website at www.kineticreceivership.com. The Receiver incorporates the Fifth Report into this Application and attaches a true and correct copy of the Fifth Report as **Exhibit 2** for the Court's convenience.

## II. <u>Background</u>

On February 20, 2020, the Commission filed a complaint (Doc. 1) (the "Complaint") in the United States District Court for the Middle District of Florida (the "Court") against the Defendants Kinetic Investment Group, LLC and Michael S. Williams and Relief Defendants Kinetic Funds I, LLC, KCL Services, LLC d/b/a Lendacy, Scipio, LLC, LF 42, LLC, El Morro Financial Group, LLC, and KIH Inc., f/k/a Kinetic International, LLC, alleging that the Defendants violated the Securities Act of 1933, the Securities Exchange Act of 1934, and the Investment Advisers Act of 1940 by making false or materially misleading representations to investors and that

over $6 million of investor funds was misappropriated to fund other business ventures and pay for other unauthorized expenses. Doc. 1.[3]

According to the Complaint, the scheme involved securities offerings made on behalf of Relief Defendant Kinetic Funds, a purported hedge fund with a sub-fund structure managed by Defendants Kinetic Investment Group, LLC ("Kinetic Investment") and Williams. Defendants represented to investors that the largest sub-fund, Kinetic Funds Yield ("KFYield"), invested all of its assets in income-producing U.S. listed financial products hedged by listed options. *Id.* ¶ 2. Potential investors were told that KFYield was a liquid investment that would "maintain 90% principle [sic] protection" and that an investor could redeem their principal investment "100%...without penalties" with a 30-day written notice. *Id.* ¶¶ 2, 28.

Investors in the KFYield fund, which attracted the near-entirety of investor funds, were also often provided with documentation from Bloomberg's reporting service  containing claims about KFYield's performance including that the fund had achieved positive annual returns every year since inception. Many, but not all, KFYield investors were also attracted to the investment opportunity given the advertised ability to simultaneously obtain a low- interest loan at the time of their investment from Relief Defendant KCL Services d/b/a Lendacy ("Lendacy") based on the amount of their KFYield investment. Investors understood that Lendacy utilized its own private funding source to make the low-interest loans.

---

[3] On April 27, 2020, Williams served his Answer and Affirmative Defenses largely denying the Commission's allegations (Doc. 56).

On March 6, 2020, the Court granted the Commission's Motion for Appointment of Receiver and entered an Order appointing Mark A. Kornfeld as the Receiver over Defendant Kinetic Investment Group, LLC and the Relief Defendants ("Order Appointing Receiver") (Doc. 34). The Receiver's preliminary investigation has uncovered evidence supporting the Commission's allegations that Defendants made a number of misrepresentations relating to the promised and actual use of investor funds and the performance of the Kinetic Funds portfolios. The Receiver's preliminary forensic accounting also shows that at least $6 million of investor funds were either misappropriated or otherwise diverted to other projects and expenses unrelated to the Kinetic Funds investment opportunity.

A mediation was held on August 28, 2020, but resulted in an impasse (Doc. 132). Both the Commission and Mr. Williams have filed motions for summary judgment.

III. **Professional Services**

Pursuant to the Order Appointing Receiver, the Receiver obtained approval to engage various Retained Personnel to assist him in carrying out his duties and responsibilities in the Order Appointing Receiver. The Order Appointing Receiver further set forth the frequency and procedures pursuant to which the Receiver was to seek compensation and expense reimbursement for the Receiver and his Retained Professionals. Doc. 34 ¶¶ 53-54. In accordance with the Commission's Billing Instructions, the Receiver states as follows:

**(a)** **Time period covered by the Application:** January 1, 2021 – March 31, 2021.

**(b)** **Date of Receiver's appointment:** March 6, 2020.

**(c)** **Date services commenced:** February 14, 2020.[4]

**(d)** **Names and rates of all professionals:** See Exs. 5-6.

**(e)** **Interim or Final Application:** Interim.

**(f)** **Records supporting fee application:** See below.

The following exhibits are provided in accordance with the Billing Instructions:

Exhibit 3:    Receiver's Certification

Exhibit 4:    Total compensation and expenses requested; any
              amounts previously requested; and total
              compensation and expenses previously awarded

Exhibit 5:    Fee Schedule: Names and Hourly Rates of Professionals and
              Paraprofessionals & Total Amount Billed for each Professional
              and Paraprofessional:

Exhibit 5(a): Buchanan Ingersoll & Rooney PC

Exhibit 5(b): Yip & Associates

Exhibit 5(c): E-Hounds

Exhibit 5(d): PDR CPAs + Advisors

Exhibit 5(e): IRW Law Offices

---

[4] As further described in the Receiver's First Omnibus Fee Application, the Receiver and his professionals began undertaking efforts in the weeks prior to his appointment to prepare for the possibility of the Order Appointing Receiver being entered at or following the hearing on March 6, 2020, but neither the Receiver not his Professionals sought reimbursement of those fees or expenses.

Exhibit 6:    The Professionals' time records for the time period covered by this Application, sorted in chronological order, including a summary and breakdown of the requested reimbursement of expenses:

Exhibit 6(a): Buchanan Ingersoll & Rooney PC

Exhibit 6(b): Yip & Associates

Exhibit 6(c): E-Hounds

Exhibit 6(d): PDR CPAs + Advisors

Exhibit 6(e): IRW Law Offices

## IV.    Case Status

### (a)    Cash on hand

As of the date of this Application, the Receivership bank accounts have a cumulative balance of $20,409,283.83,[5] which includes the net proceeds from the liquidation of Receivership brokerage accounts as well as the recent deposit of approximately $4 million in net proceeds from the Receiver's sale of the Banco Espanol building in Puerto Rico.[6]

---

[5] This balance includes approximately $325,295.00 in funds previously held in Mr. Williams' prior counsel's trust account and which were subsequently transferred to the Receiver's fiduciary accounts to be held in trust pending further Order from the Court. In the interim, the Court has authorized the payment of various living and legal expenses to or for Mr. Williams' benefit.

[6] Upon his appointment, the Receiver took possession of various sub-accounts at Interactive Brokers held by Kinetic Funds (the "KF Brokerage Account"), including several sub-accounts which appear to have been managed separately from Kinetic Funds (the "Other Accounts") and the existence of approximately $12 million in margin obligations.  The Receiver reached a settlement with the owners of the Other Accounts providing for a resolution of the roughly $12 million in margin obligations across the KF Brokerage Account as well as the transfer of the net proceeds to the Receiver's fiduciary accounts, and filed a motion on September 30, 2020, seeking the Court's approval of that settlement as well as the

**(b)**      **Summary of the administration of the case**

Since his appointment on March 6, 2020, the Receiver has administered the case with the objective of efficiently fulfilling his duties under the Order Appointing Receiver while doing so as cost-effectively as possible by, wherever available, leveraging the use of professionals with favorable rate structures.

During this reporting period, the Receiver has focused on continuing his investigation of the underlying business operations of the various Receivership Entities, enhancing and preserving the value of Receivership assets, investigating potential avenues to recover additional assets, and instituting a Court-approved framework to return funds to victims. These efforts have included commencing the Court-approved claims process and reviewing submitted Proof of Claims, seeking and obtaining Court approval of the sale of the El Banco Espanol building in Puerto Rico and carrying out the Court-approved overbid procedure, obtaining appraisals and commencing the marketing process for the Villa Gabriella real estate in Puerto Rico, evaluating and obtaining approval for the Receiver to pursue potential third-party claims, obtaining approval for retention of a professional to review the ISX asset, and

---

closing of the KF Brokerage Account (the "Settlement Motion") (Doc. 141). The Court entered an Order granting the Settlement Motion on November 5, 2020 (Doc. 152) which, in relevant part, authorized the Receiver to carry out the proposed settlement and liquidate the KF Brokerage Account. The Receiver, with the assistance of his Retained Professionals, took necessary steps to comply with the Order resulting in the repayment of the remaining margin obligations and subsequently transferring net proceeds of approximately $5.5 million from the KF Brokerage Account to the Receiver's fiduciary accounts at ServisFirst Bank. This transfer was in addition to the settlement payments totaling approximately $3.4 million paid by the owners of the Other Accounts to the Receiver pursuant to the Settlement Motion.

continuing to investigate the underlying business operations and additional potential avenues for asset recovery. Although the Receiver has made significant progress, Defendant Williams continues to contest the Commission's allegations and thus the Receiver is unable to offer an estimate as to when the case is expected to close.

(c)     **Summary of creditor claims proceedings**

The Receiver, along with his Retained Professionals, undertook significant efforts to understand the relationship between the Receivership Entities and current and former investors in order to determine the most equitable framework for a claims process to return investor funds that can be submitted for the Court's approval. Complicating this analysis was the fact that many of the current and former investors in Kinetic Funds also obtained a loan (or loans) from Receivership Entity Lendacy, which required the Receiver and his forensic professionals to conduct a full forensic analysis of the flow of funds between investors and all Receivership Entities over a seven-year period based on available financial records.

Following the Court's approval of the Receiver's Amended Motion to Establish and Approve (i) Procedure to Administer and Determine Claims; (ii) Proof of Claim Form; and (iii Claims Bar Date and Notice Procedures (Doc. 155), the Receiver mailed out over 100 proof of claim packets to potential claimants and creditors on November 17, 2020, published notification of the claim bar date of **February 15, 2021** in specified newspapers and his website, and filed his Notice of Publication and Claim Bar Date (Doc. 165).  The Receiver ultimately received 37 proof of claim packets and is in the process of reviewing all Proof of Claim Forms

before seeking the Court's approval of his claim determinations. At this stage, the Receiver does not believe that sufficient funds exist to satisfy all anticipated investor claims in full.

### (d) Description of assets

In additional to the descriptions provided herein, for detailed information about the assets of the receivership estate, including the anticipated or proposed disposition of the assets, the Receiver respectfully refers the Court and interested parties to the Fifth Report attached hereto as **Exhibit 2**.

### (e) Description of liquidated and unliquidated claims held by the Receiver

The Receiver continues to review potential causes of action against the principals of the Receivership Defendants and various third parties, which claims remain subject to the Receiver's ongoing investigation with the assistance of his legal and forensic professionals. These claims may include common law claims and claims under fraudulent transfer statutes. While the Receiver cannot yet predict the likelihood, amount or cost-effectiveness of particular claims or the claims as a whole, the Receiver continues to diligently evaluate claims against third parties.

## V.   Services Provided And Compensation Sought By The Professionals

### (a) Services Provided By The Receiver And Buchanan Ingersoll & Rooney PC

The Receiver is a Shareholder at the law firm of Buchanan Ingersoll & Rooney PC ("Buchanan Ingersoll"). The Receiver has practiced law for nearly thirty years and has experience handling fraud recovery cases. The Receiver initially obtained

Court approval to retain the services of Quarles & Brady, LLP ("Quarles & Brady") to serve as his legal counsel. As an accommodation to the Receiver and the public interest nature of this matter, Quarles & Brady agreed to reduce the billing rate of its professionals for this case as provided in the Fee Schedule attached hereto as **Exhibit 5** which was, on average, more than 20% (and in some instances, closer to 30%) less than the customary rate charged to clients. To date, these discounts resulted in a total reduction of over $100,000 from the rates customarily charged by Quarles & Brady attorneys to clients.  As of December 14, 2020, the Receiver and his lead counsel (Jordan D. Maglich) became associated with Buchanan Ingersoll.  The Court approved the retention of Buchanan Ingersoll on December 9, 2020 (Doc. 159), including Buchanan Ingersoll's agreement to continue the reduced existing billing rate of the Receiver and his professionals.

The standard hourly rate which the Receiver charges clients begins at (and often exceeds) $625.  The Receiver agreed that for purposes of his appointment as the Receiver, his hourly rate would be reduced to $437.50 per hour, representing approximately a thirty percent (30%) discount off the standard hourly rate which he charges clients in comparable matters. This rate was set forth in the Commission's Motion to Appoint Receiver, which the Court granted on March 6, 2020 (Doc. 34). During the time covered by this motion, the Receiver seeks compensation for 197.5 hours expended on this Receivership.  A copy of the statement summarizing the services rendered by the Receiver is attached hereto as **Exhibit 6(a)**. The Receiver

requests the Court award him fees for the professional services rendered from January 1, 2021 through March 31, 2021, in the amount of $86,406.25.

During the period covered by this Application, Buchanan Ingersoll spent 231.1 hours in assisting the Receiver in fulfilling his duties under the Order Appointing Receiver but only seeks compensation for 210.3 hours expended by legal professionals at Buchanan Ingersoll for professional services in the amount of $60,947.74. The statement summarizing the services rendered by Buchanan Ingersoll is also encompassed within **Exhibit 6(a)** attached hereto. The work performed by Buchanan Ingersoll has been focused on investigating the fraud and related activities underlying this matter; locating and taking control of Receivership assets; investigating and pursuing additional assets for the Receivership, and coordinating the framework and procedures for a Court-approved claims process as detailed in the Interim Report. For the period from January 1, 2021, through March 31, 2021, the Receiver requests that the Court award the Receiver and Buchanan Ingersoll for professional services rendered in the amount of $147,353.99.

The Receiver and his legal professionals with Buchanan Ingersoll provided these services to investigate the affairs of the Receivership Entities, preserve Receivership assets, and attempt to locate and recover additional assets. These services were incurred in connection with the administration of the Receivership and are for the benefit of aggrieved investors, creditors, and other interested parties of the Receivership Entities. All of the services for which compensation is sought were rendered on behalf of the Receivership Entities and in furtherance of the duties of the

15

Receiver, and in discharge of the Receiver's responsibilities under the Order Appointing Receiver.

**(b)    Services Provided By Yip & Associates**

The Receiver obtained Court approval to retain the services of Yip Associates, experienced forensic accountants, to assist in investigating and analyzing the flow of funds both into and out of the various businesses operated by the Receivership Entities, and to assist in locating any additional funds. Yip & Associates has significant experience conducting forensic and fraud investigations in actions brought by state and federal regulators including the Securities and Exchange Commission. As set forth in the Receiver's Motion to Retain Yip & Associates, Yip & Associates agreed to reduce the rates of its professionals for this case. Hal Levenberg, a Director at Yip & Associates whose normal hourly rate charged to clients is $395, agreed to cap his rate at $295 which is the same rate charged by the Receiver's lead counsel, Jordan D. Maglich. Yip & Associates also agreed to discount the hourly rates charged by associates and senior associates from $195 to $245 to $175 and $220, respectively.

The Receiver has relied on Yip & Associates' extensive forensic accounting experience to assist him in understanding the complex relationship between the various Receivership Entities as well as account for the numerous inflows and outflows over the past seven-year period for which the Receiver has obtained voluminous banking and brokerage statements. These services were instrumental to helping the Receiver understand and account for the flow of funds between the various entities and also saved the Receiver considerable time in preparing various

documents and pleadings incorporating this forensic analysis including the Interim Reports. Yip & Associates also provided necessary services to allow the Receiver to analyze and determine the appropriate method and process for distributing funds back to investors and interested parties with approved claims, which ultimately resulted in the Receiver's mail-out of over 100 proof of claim packets to potential claimants and creditors and the subsequent analysis of the claims submitted by those potential claimants.

During the period covered by this Application, Yip & Associates billed 171.4 hours in assisting the Receiver in fulfilling his duties under the Order Appointing Receiver, but only seeks compensation for 161.7 of those hours consisting of fees in the sum of $38,705.00.  A copy of the statement summarizing the services rendered by Yip & Associates is attached hereto as **Exhibit 6(b)**. The Receiver requests that the Court award Yip & Associates fees for professional services rendered January 1, 2021, through March 31, 2021, in the amount of $38,705.00.

### (c)     Services Provided By E-Hounds, Inc.

The Receiver obtained Court approval to retain the services of E-Hounds, Inc. ("E- Hounds") to assist with managing and facilitating access to data imaged from electronic devices and hardware belonging to the Receivership Entities. As set forth in the Receiver's Motion to Retain Information Technology Professionals ) (the "IT Motion") (Doc. 38), E- Hounds principal Adam Sharp has extensive experience in this field and also with assisting court-appointed receivers including in matters brought by the SEC.  As an accommodation to the Receiver, E-Hounds agreed not to

charge an up-front retainer and provided preferred hourly rates ranging from $195 to $250 for customary forensic imaging tasks.[7] The Receiver has leveraged E-Hounds' lower rate structure to identify and preserve electronic data obtained from Receivership Entities' computer servers, electronic devices and paper files located at the Sarasota office and utilize the firm's review platform as a central review platform with no additional servicing or storage fees. The Court granted the Receiver's Motion to retain E- Hounds on March 6, 2020 (Doc. 42).

The extent of services provided by E-Hounds to the Receiver during this application period has primarily consisted of updating and providing the document review platform and, where necessary, performing one-off forensic imaging tasks. The Receiver anticipates that this will remain the primary services provided by E-Hounds for the foreseeable future. During the period covered by this Application, E-Hounds seeks reimbursement of expenses in the sum of $2,625.00. A copy of the statement summarizing the services rendered by E-Hounds is attached hereto as **Exhibit 6(c)**. The Receiver requests that the Court award E-Hounds fees for costs incurred from January 1, 2021, through March 31, 2021, in the amounts of $2,625.00.

**(d)      Services Provided By PDR CPAs + Advisors.**

The Receiver obtained Court approval to retain the services of PDR CPAs + Advisors ("PDR") to handle tax-related issues for the Receivership Entities. (Doc.

---

[7] E-Hounds' fee proposal, which was included in the Receiver's IT Motion, also included additional fees and services for non-customary tasks including expert witness and "triage reporting" services. Doc. 38 Ex. 2.

47.) This includes the preparation of any required tax-related documents as well as analyzing previous tax documents to assist the Receiver in performing his duties. PDR's principal, Bill Price, routinely provides tax and accounting services in receivership matters. During the period covered by this Application, PDR billed the Receiver $2,996.25 as set forth in the invoices attached as **Exhibit 6(d)**. The Receiver requests that the Court award PDR fees for professional services rendered incurred from January 1, 2021, through March 31, 2021, in the amount of $2,996.25.

(e)     **Services Provided By IRW Law Offices.**

In connection with his efforts to market and sell various Receivership real property located in Puerto Rico, the Receiver obtained Court approval to retain the services of IRW Law Offices ("IRW") to provide legal services to the Receiver regarding those efforts. (Doc. 154). This includes the preparation of necessary sale-related documents and other services to assist the Receiver in performing his duties. During the period covered by this Application, the Receiver required IRW's assistance in connection with the marketing and sale of the El Banco Espanol building in San Juan, Puerto Rico.  During this period, IRW seeks compensation for 3.0 hours expended on this matter and billed the Receiver $587.50 as set forth in the invoices attached as **Exhibit 6(e)**. The Receiver requests that the Court award IRW fees for professional services rendered incurred from January 1, 2021, through March 31, 2021, in the amount of $587.50.

## MEMORANDUM OF LAW

A receiver appointed by a court who reasonably and diligently discharges his duties is entitled to be fairly compensated for services rendered and expenses incurred. *See SEC v. Elliott*, 953 F.2d 1560 (11th Cir. 1992) ("[I]f a receiver reasonably and diligently discharges his duties, he is entitled to compensation."); *Donovan v. Robbins*, 588 F. Supp. 1268, 1272 (N.D. Ill. 1984) ("[T]he receiver diligently and successfully discharged the responsibilities placed upon him by the Court and is entitled to reasonable compensation for his efforts."); *SEC v. Custable*, 1995 WL 117935 (N.D. Ill. Mar. 15, 1995) (receiver is entitled to fees where work was of high quality and fees were reasonable); *SEC v. Mobley*, 2000 WL 1702024 (S.D.N.Y. Nov. 13, 2000) (court awarded reasonable fees for the receiver and his professionals). In determining reasonable compensation for the services rendered by the Receiver and his Professionals, the Court should consider the circumstances surrounding the receivership. *See Elliot*, 953 F.2d at 1577.

In addition to fees, the receiver is "also entitled to be reimbursed for the actual and necessary expenses" that the receiver "incurred in the performance of [its] duties." *Fed. Trade Comm'n v. Direct Benefits Grp., LLC*, 2013 WL 6408379, at \*3 (M.D. Fla. 2013). The Receiver and his Professionals support their claims for reimbursement of expenses with "sufficient information for the Court to determine that the expenses are actual and necessary costs of preserving the estate." *SEC v. Kirkland*, 2007 WL

470417, at *2 (M.D. Fla. 2007) (citing *In re Se. Banking Corp.*, 314 B.R. 250, 271 (Bankr. S.D. Fla. 2004)).

Here, because of the nature of this case, it was necessary for the Receiver to employ attorneys, accountants, and professionals experienced and familiar with financial frauds, federal receiverships, securities laws, banking, finance, and trusts and estates. Further, in order to perform the services required and achieve the results obtained to date, the skills and experience of the Receiver and the Professionals in the areas of fraud, securities, computer and accounting forensics, and financial transactions were indispensable.

The Receiver and his legal, forensic, and information technology professionals have each discounted their normal and customary rates as an accommodation to the Receivership and to conserve Receivership assets. The rates charged by the attorneys and paralegals are at or below those charged by attorneys and paralegals of comparable skill from other law firms in the Middle District of Florida. This case has been time-intensive for the Receiver and his Professionals because of the need to resolve many issues rapidly and efficiently. The attached Exhibits detail the time, nature and extent of the professional services rendered by the Receiver and his Professionals for the benefit of investors, creditors, and other interested parties. The Receiver anticipates that additional funds will be obtained through the Receiver's negotiations or litigation with third parties.

The Receiver is sensitive to the need to conserve the Receivership Entities' assets and respectfully submits that the fees and costs expended to date were

reasonable, necessary, and benefited the Receivership. Notably, the Commission has no objection to the relief sought in this motion. *Custable*, 1995 WL 117395, *7 ("In securities law receiverships, the position of the SEC in regard to the awarding of fees will be given great weight.")

## CONCLUSION

Under the terms and conditions of the Order Appointing Receiver, the Receiver, among other things, is authorized, empowered, and directed to engage professionals to assist him in carrying out his duties and obligations. The Order further provides that he apply to the Court for authority to pay himself and his Professionals for services rendered and costs incurred. In exercising his duties, the Receiver has determined that the services rendered and their attendant fees and costs were reasonable, necessary, advisable, and in the best interest of the Receivership.

**WHEREFORE,** Mark A. Kornfeld, the Court-appointed Receiver, respectfully requests that this Court award the following sums and direct that payment be made from the Receivership assets:

| | |
|---|---|
| Mark A. Kornfeld, Esq.  and Buchanan Ingersoll | $147,353.99 |
| Yip & Associates | $38,705.00 |
| E-Hounds | $2,625.00 |
| PDR CPAs + Advisors | $2,996.25 |
| IRW Law Offices | $587.50 |

A proposed Order is attached as **Exhibit 7**.

**WHEREFORE**, the Receiver seeks entry of an Order granting this motion and awarding the Receiver and his professionals their interim fees, reimbursement of costs, and for such other relief that is just and proper.

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), the Receiver hereby certifies that he has conferred with counsel for Plaintiff, Securities and Exchange Commission, which does not oppose the requested relief. The Receiver has also conferred with counsel for Defendant Michael S. Williams, who takes no position on the requested relief.

Respectfully submitted,

BUCHANAN INGERSOLL & ROONEY PC

By: */s/ Jordan D. Maglich*
Jordan D. Maglich, Esq. (FBN 0086106)
Lauren V. Humphries, Esq. (FBN 117517)
401 E. Jackson St., Suite 2400
Tampa, FL 33602
Telephone: (813) 222-2098
Facsimile: (813) 222-8189
Email: jordan.maglich@bipc.com
*Attorneys for Receiver Mark A. Kornfeld*

## CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a Notice of Electronic Filing to the following counsel of record:

Christine Nestor, Esq.
Stephanie N. Moot, Esq.
John T. Houchin, Esq.
Barbara Viniegra, Esq.
Securities and Exchange Commission
801 Brickell Avenue, Suite 1950
Miami, FL 33131
nestorc@sec.gov
moots@sec.gov
houchinj@sec.gov
viniegrab@sec.gov
*Counsel for Plaintiff*

Timothy W. Schulz, Esq.
Timothy W. Schulz, P.A.
224 Datura Street, Suite 815
West Palm Beach, FL 33401
e-service@twslegal.com

Jon A. Jacobson, Esq.
Jacobson Law, P.A.
224 Datura Street, Suite 812
West Palm Beach, FL 33401
jjacobson@jlpa.com
e-service@jlpa.com
*Counsel for Defendant Michael Williams*

By: */s/   Jordan D. Maglich*
        Attorney

24